2000 ND 129

**In the Interest of N.C.C.**

**N.C.C., David E. Braaten, Director of Grand Forks County Social Service Board, Guardian Ad Litem for N.C.C., Plaintiffs,**

**and**

**C.J.W., Plaintiff and Appellant,**

**v.**

**C.S.C., Defendant and Appellee.**

**No. 990339.**

Supreme Court of North Dakota.

June 29, 2000.

Thomas J. Kuchera, Kuchera, Stenehjem, Walberg & Sharp, Grand Forks, ND, for plaintiff and appellant.

Constance L. Triplett, Triplett Law Office, Grand Forks, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] C.J.W. ("the mother") appeals from the district court's order denying her motion to amend the judgment and from its judgment changing custody of N.C.C. ("the child") from her to C.S.C. ("the father"). We hold the district court did not clearly err in changing custody. We therefore affirm.

I

[¶ 2] The child was born on February 26, 1994, in Grand Forks, North Dakota. The mother and the father never married. In December 1994, the district court issued a judgment establishing paternity, awarding custody to the mother, establishing the father's child support obligation, and granting reasonable visitation rights to the father.

[¶ 3] In July 1997, the father moved to establish structured visitation. He asserted the mother had often denied him visita-tion since June 1996 and the mother had taken the child and left the state. At a subsequent hearing, the mother conceded she had temporarily left the state. The district court advised the mother she could not take the child and move from the state without either the father's permission or the court's permission. The court also warned both parties that future lack of cooperation could result in loss of custody and placement with a third party. The mother admitted she "put a stop to [the father's visitation] until he could find his own home and car to come and get [the child] and that never did successfully turn out." The court ordered the parties to submit to psychological evaluations and any counseling deemed necessary and indicated a structured supervised visitation schedule would be set following the evaluations.

[¶ 4] Without obtaining the father's or the court's permission, the mother moved with the child to Oklahoma in March 1998. She sent a letter informing the father she was leaving the state but did not indicate where she was going.

[¶ 5] Emphasizing the mother's move from the state without permission, the mother's continued lack of cooperation, and his good faith efforts to comply with the court's directives, the father moved to change custody. In September 1998, the court issued an interim order, granting father temporary physical custody of the child and directing authorities to contact the father when the child's whereabouts were discovered. In late 1998, authorities located the child and the mother, and the child was returned to Grand Forks. The mother also returned.

[¶ 6] After a hearing, the court issued a decision in March 1999, finding there had been a material change in circumstances since the 1994 judgment and the child's best interests would be served by changing custody. The court explained "[s]ince entry of judgment in December 1994, there has been a continuing and orchestrated frustration of [the father's] visitation

rights with his son by [the mother], and this frustration has impeded a paternal bonding between [the father] and his son." In an amended judgment issued on April 6, 1999, the court awarded physical custody to the father, established the mother's child support obligation at $314 per month, and granted liberal visitation rights to the mother. Notice of entry of the amended judgment was issued on April 8, 1999.

[¶ 7] On April 23, 1999, the mother filed a motion for a stay and for further amendment of the judgment. In her motion, the mother indicated she moved to modify the amended judgment "insofar as it relates to child support," "[m]otion is made pursuant to Rule 59, NDRCivP," and "[m]ovant does not request oral argument." Asserting the court relied on improper employment information, the mother contended the court's child support order did not comply with the child support guidelines. She requested both parties be ordered to submit a joint child support computation. In August 1999, the mother amended her motion, submitting child support worksheets and a request for a hearing.

[¶ 8] A hearing took place in September 1999. The mother argued the child support computations were erroneous because they were based on a job she never acquired and they failed to consider she had another child in her household.

[¶ 9] On October 7, 1999, the court issued an order denying the mother's N.D.R.Civ.P. 59 motion and reducing the mother's child support obligation to $250 per month. A second amended judgment incorporating the reduced child support obligation was filed on October 7, 1999. The mother filed a notice of appeal indicating she appeals from "the Order denying her motion for a new trial under Rule 59" and from the judgment changing custody. Here, however, the mother only challenges the district court's judgment changing custody and does not raise any issues regarding the denial of her N.D.R.Civ.P. 59 motion.

## II

[¶ 10] Emphasizing the mother, in her N.D.R.Civ.P. 59 motion, only challenged child support determinations in hearings, briefs, and other documents submitted to the district court, the father argues the mother's attempt to now raise custody issues should be rejected. We have explained although not necessary to bring a N.D.R.Civ.P. 59(b) motion in order to appeal the underlying judgment, "when a motion for new trial is made in the lower court, the moving party is limited on appeal to a review of the grounds presented to the trial court, even if the appeal is also from the judgment itself." *Larson v. Kubisiak*, 1997 ND 22, ¶ 5, 558 N.W.2d 852.

[¶ 11] Here, we need not consider whether the mother properly raised issues in her motion because, although the mother and the district court sometimes labeled her motion as one for a new trial, we conclude her motion was actually one to alter or amend the judgment. We are not bound by the district court's or a party's label, and may look to the substance of the motion to determine its proper classification. "Improper labels are not binding on appeal." *Cumber v. Cumber*, 326 N.W.2d 194, 195–96 (N.D.1982) (holding an interlocutory determination was erroneously labeled a "judgment"); *see also City of Grand Forks v. Henderson*, 297 N.W.2d 450, 453 (N.D.1980) (concluding objections to attorney fees and the related proceedings were the equivalent of a N.D.R.Civ.P. 59(j) motion). A party, however, bears the burden to correctly label its motion so as to inform the adversary of the nature of the motion and the relief sought. *See* N.D.R.Civ.P. 7(b)(2) (providing "[t]he rules applicable to captions and other matters of form of pleadings apply to all motions"); *Vande Hoven v. Vande Hoven*, 399 N.W.2d 855, 859 (N.D.1987) (explaining "[t]he paramount purpose of Rule 7(b), N.D.R.Civ. P., as well as the other procedural rules governing pleadings and motions, is to inform a party of the nature of the claims being asserted against him and the relief

demanded by his adversary"). We will not always look beyond a party's labels. Since the mother properly captioned her motion as seeking amendment of the judgment and only mischaracterized the motion as one for a new trial in later proceedings, we will look beyond such mischaracterization.

[¶ 12] Unlike a N.D.R.Civ.P. 59(b) motion for a new trial, a N.D.R.Civ.P. 59(j) motion to alter or amend a judgment does not usually request a reexamination of issues of fact. Rather, a motion to alter or amend "may be used to ask the court to reconsider its judgment and correct errors of law." 47 Am.Jur.2d *Judgments* § 743 (1995 & Supp.1999). The failure to properly apply the child support guidelines to the facts involves an error of law. *Richter v. Houser*, 1999 ND 147, ¶ 3, 598 N.W.2d 193. Both the mother's initial motion to amend and her amended motion to amend indicate she sought to correct the child support order so that it complied with the guidelines. The mother asserted the district court improperly computed her obligation by considering inappropriate employment information and by failing to consider another child lived in her household. At the hearing on her motion, the mother again contended the district court erred in calculating her child support obligation. Because the mother requested the district court reconsider its judgment and correct errors of law, her motion was a N.D.R.Civ.P. 59(j) motion to alter or amend the judgment rather than a N.D.R.Civ.P. 59(b) motion for a new trial. The mother accordingly is not limited in her appeal from the judgment to a review of the grounds presented in her motion to the trial court. *See Larson*, at ¶ 5. The issue of custody is reviewable under N.D.R.App.P. 35(a).

### III

[¶ 13] The father challenges the timeliness of the mother's appeal from the judgment. Under N.D.R.App.P. 4(a)(4), the time for filing a notice of appeal from a judgment is tolled by a party's timely motion under N.D.R.Civ.P. 59(j). *City of Grand Forks v. Henderson*, 297 N.W.2d 450, 453 (N.D.1980) (concluding objections to attorney fees and the related proceedings were a Rule 59(j) motion which "tolled the time for appeal and established a new time period beginning from the notice of entry of the amended judgment"). A motion is timely under N.D.R.Civ.P. 59(j) if served and filed no later than 15 days after notice of entry of the judgment. Following the denial of a N.D.R.Civ.P. 59(j) motion, N.D.R.App.P. 4(a)(4) provides a party has the full 60 days to appeal from the judgment. *Id.*

[¶ 14] The mother's appeal is timely. The mother timely moved for relief under N.D.R.Civ.P. 59(j) because she submitted her motion no more than 15 days after notice of entry of the judgment changing custody. Notice of entry of the judgment was issued on April 8, 1999, and the mother filed her motion on April 23, 1999. The mother's appeal from the judgment is timely because she filed her notice of appeal within 60 days of the order denying her motion. The order denying the mother's motion was filed on October 7, 1999, and the mother filed her notice of appeal on November 8, 1999.

### IV

[¶ 15] The mother challenges the district court's decision to change custody. Under N.D.C.C. § 14–09–06.6(6):

The court may modify a prior custody order after the two-year period following the date of entry of an order establishing custody if the court finds:

a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

b. The modification is necessary to serve the best interest of the child.

[¶ 16] A district court's findings on a motion to modify custody will not be

set aside unless they are clearly erroneous. *Hendrickson v. Hendrickson*, 1999 ND 37, ¶ 6, 590 N.W.2d 220. A finding is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire evidence, we are left with a definite and firm conviction a mistake has been made. *Tormaschy v. Tormaschy*, 1999 ND 131, ¶ 11, 596 N.W.2d 337.

[¶ 17] Here, the district court applied the proper two-prong test under N.D.C.C. § 14–09–06.6(6) to determine whether custody should be changed. The court found there had been a material change in circumstances since the order establishing custody and modification of custody was necessary to serve the child's best interests.

## A

[¶ 18] A material change in circumstances occurs when there are "new facts which were unknown to the moving party at the time the decree was entered." *Wright v. Wright*, 463 N.W.2d 654, 655 (N.D.1990) (describing the term "changed circumstances").

[¶ 19] The record supports the district court's finding a material change has occurred in the circumstances of the child or the parties since issuance of the order establishing custody. There is evidence the mother has repeatedly frustrated the father's visitation. The father stated the mother began denying visitation prior to June 1996. The mother admitted she took the child and temporarily left the state in 1997. She also admitted she refused to allow the father to exercise visitation until he had his own home and vehicle. Despite the district court's clear directive, the mother moved with the child to Oklahoma in 1998. She testified "I knew if I left permanently that I should ... ask for permission but when I left, I had intentions of coming back if at all possible." The guardian ad litem testified the mother was reluctant to allow the father into the child's life.

[¶ 20] There is evidence the mother attempted to alienate the father from the child. Carol Schneweis, a clinical social worker, stated she witnessed some conversations between the father and the child which indicated the mother was trying to alienate the father from the child. The guardian ad litem reported "[i]t appears from the content of the letters [sent from the mother to the child], comments from Ms. Schneeweiss [sic], [the father] and [the child], and [the mother] herself, that she has tried to alienate [the child] from his father."

[¶ 21] There is evidence the mother failed to cooperate with social services' efforts to provide assistance for the child and her. Shari Fiedler, a social services employee, testified the mother often refused to meet with her. The guardian ad litem testified the mother has refused to allow social services employees to enter her home to observe the home environment.

[¶ 22] Finally, there is evidence the father has become dedicated to improving himself and the parties' relationship so the child will benefit. Carol Schneweis testified that after attending some counseling sessions, the father realized "his role was to put [the child's] interests first." She testified "[the father] understands [the child's] need to have a relationship with his mother." In a July 7, 1998 letter to the district court, Schneweis reported "[the father] is making every effort to be prepared to parent [the child] in a responsible[,] loving manner." The guardian ad litem reported "[the father] has made significant positive changes in his life" and "is willing to continue to work with the social service agencies."

[¶ 23] Based on the foregoing evidence, we conclude the district court did not clearly err in finding there was a material change in circumstances.

## B

[¶ 24] In determining whether modification of custody is necessary to

serve the child's best interests, the district court must use the factors set forth in N.D.C.C. § 14–09–06.2(1). *Blotske v. Leidholm,* 487 N.W.2d 607, 610 (N.D.1992). The best interests of the child must be gauged against the backdrop of the stability of the child's relationship with the custodial parent. *Id.*

[¶ 25] The district court acknowledged the factors must be "balanced against the stability of a child's relationship with the custodial parent," but indicated it "is not sure that [the child] has ever been able to live in a stable satisfactory environment."

[¶ 26] The record supports the district court's indication the child's relationship with the mother lacked stability. The mother testified she once left the child with her other son's family in Wisconsin for approximately nine weeks and, on another occasion, she left the child with her friend's grandmother for approximately two weeks. Carol Schneweis reported she and the mother "were working on helping [the mother] provide increased structure and stability for [the child]" just before the mother took the child and moved to Oklahoma. The guardian ad litem reported the mother admitted she left the child with a babysitter for a few days because she was caught in a blizzard and she had lost many jobs and homes. The guardian ad litem concluded the mother's "pattern of moving around and leaving her children unattended indicates that she needs some help with her own parenting." Shari Fiedler testified there was evidence the mother failed to provide adequate supervision on at least

one occasion. Fiedler also testified the mother "has put her own needs before her son's, and [has] not looked at his best interests." We accordingly conclude the district court properly considered the stability of the child's relationship with the mother and did not clearly err in indicating that relationship lacked stability.

[¶ 27] The district court indicated factors (b), (c), (g), and (h),[1] N.D.C.C. § 14–09–06.2(1), favored modification of custody and the other factors were not applicable or were of little importance. The court emphasized the mother's long pattern of frustrating the father's visitation rights, the mother's failure to cooperate with social services and the father, and the father's commitment to the child.

[¶ 28] The district court properly considered the mother's frustration of visitation. A custodial parent's "move to another state [without the permission of either the district court or the noncustodial parent] does not, by itself, compel a change of custody." *Gould v. Miller,* 488 N.W.2d 42, 44 (N.D.1992). However, the district court, in reviewing a change of custody motion, may consider a parent's repeated frustration of visitation. *Hendrickson v. Hendrickson,* 1999 ND 37, ¶ 13, 590 N.W.2d 220.[2] Because there is evidence the mother has repeatedly frustrated visitation despite being advised she needed to obtain permission to move from the state and being advised she might lose custody, the district court did not clearly err in determining the frustration is a factor which supports changing custody.

---

1. Those factors are:
   b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.
   c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
   . . .
   g. The mental and physical health of the parents.

   h. The home, school, and community record of the child.

2. In *Hendrickson,* we explained, "[a]lthough, we recognize methods other than a change of custody should be used initially to remedy a parent's misbehavior, we also recognized that, after exhausting other remedies, a change in custody may be the only method to correct the damage of a particularly stubborn and defiant custodial parent." *Id.* at ¶ 13 (citation omitted).

[¶ 29] The district court properly acknowledged the mother's failure to cooperate with social services and the father. The court noted the mother "had prevented [the child] from accessing court-ordered services" and had "refused to participate in court-ordered evaluations and counseling at Northeast Human Center which were an attempt to resolve the ongoing acrimony between [the mother] and [the father] for the sake of their son." A parent's failure to cooperate with social service agencies is a valid factor to consider when determining a child's best interests. *See In the Interest of L.J.*, 436 N.W.2d 558, 563 (N.D.1989) (providing "[l]ack of cooperation with Social Services is pertinent to resolving whether deprivation will continue" in a termination of parental rights case). A parent's failure to cooperate with the other parent, as demonstrated by attempted alienation, is likewise relevant. *See Hendrickson*, at ¶¶ 7–8. Since there is evidence the mother has failed to cooperate with social services and with the father, the district court did not clearly err in considering her failure to cooperate supports modification of custody.

[¶ 30] Finally, the district court appropriately considered the father's commitment to the child. "A party's commitment to parenting is a valid factor to consider in determining custody." *Kjelland v. Kjelland*, 2000 ND 86, ¶ 10, 609 N.W.2d 100. Because there is supporting evidence, the district court did not clearly err in determining his commitment supports modification.

[¶ 31] Asserting the father committed a pattern of domestic violence, the mother argues the district court clearly erred in determining factor (j) was inapplicable. Under factor (j), N.D.C.C. § 14–09–06.2(1):

In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child....

[¶ 32] Here, there is evidence to support the district court's determination "[t]here appears to have been no verified incidents of domestic violence involving either party in the past five years." Shari Fiedler testified there were allegations in 1994 the father had physically abused the child; however, those allegations never went beyond a probable cause determination. Fiedler testified there were later allegations the mother physically abused the child. The mother testified the father made at least one threatening phone call to her, but the father denied ever making a threatening call. When asked whether he threatened or harassed the mother in the months prior to her move to Oklahoma, the father testified he had not spoken to the mother in the months prior to the move. Carol Schneweis testified that although the father did not complete a domestic violence program, the father made significant progress during meetings regarding parenting and anger awareness. She testified the father was frustrated with how slow the parenting and visitation issues were being resolved, but she "never felt like [he] was going to be violent." We accordingly hold the district court did not clearly err in finding there was not sufficient credible evidence of domestic violence to engage the presumption of factor (j), N.D.C.C. § 14–09–06.2(1).

[¶ 33] Based on the foregoing, we conclude the district court did not clearly err in determining modification of custody is necessary to serve the child's best interests.

V

[¶ 34] Because the district court did not clearly err in changing custody, we affirm.

[¶ 35] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.