2008 ND 61

**Edwin L. STANHOPE, Plaintiff and Appellant**

v.

**Heather J. PHILLIPS–STANHOPE, Defendant and Appellee.**

No. 20070137.

Supreme Court of North Dakota.

March 27, 2008.

Monte L. Rogneby, Vogel Law Firm, Bismarck, N.D., for plaintiff and appellant.

Paul M. Probst, Probst Law Firm, Minot, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Edwin L. Stanhope appeals from an order denying his motion to change custody of his two minor sons from their mother, Heather J. Phillips–Stanhope, to himself. We conclude the district court's finding that there has not been a material change of circumstances for a change of custody is not clearly erroneous. We affirm.

## I

[¶ 2] The parties, who had been living in Minot, were divorced in February 2004. Phillips–Stanhope was granted physical custody of the six and seven year-old children and Stanhope was granted reasonable and liberal visitation. Phillips–Stanhope continues to reside in Minot with the children. Stanhope moved to Bismarck after the parties separated. Stanhope remarried in September 2005 and currently resides in Lincoln. He adopted his wife's adult daughter who does not live with the couple.

[¶ 3] In June 2006, Stanhope moved to change custody of the children. Stanhope alleged the children were not receiving proper "medical and health care" while in Phillips–Stanhope's care. He contended the children have "many behavior problems in school" and were seeing licensed clinical social workers in Bismarck, one of whom believed the older child had Asperger's syndrome. He contended Phillips–Stanhope is unable to manage her household finances, and the children lack adult supervision while in her care because she works at Minot State University during the day and waitresses at a bar several nights a week. He also expressed concern "about the type of nutrition being provided to the boys." Phillips–Stanhope respond-ed with an affidavit disputing Stanhope's allegations. The district court determined Stanhope had established a prima facie case for change of custody, entitling him to a hearing under N.D.C.C. § 14–09–06.6. The court also ordered the parties to select an agreed upon mental health professional to test the oldest child for Asperger's syndrome.

[¶ 4] Following an evidentiary hearing, the district court denied Stanhope's motion to change custody, finding that a material change of circumstances had not occurred since the initial divorce decree had been entered. The court accepted the opinion of the expert agreed upon by the parties that the oldest son did not have Asperger's syndrome. The court further found that although Stanhope's circumstances may have improved in Lincoln, he had failed to establish that there was a significant deterioration in the circumstances of Phillips–Stanhope and the children in Minot.

## II

[¶ 5] Stanhope argues the district court erred in finding there had not been a material change in circumstances since the parties' divorce.

[¶ 6] "Before custody may be modified after a two-year period following a prior custody order, the district court must consider whether a material change in circumstances has occurred and, if the court finds a material change in circumstances, the court must decide whether custody modification is necessary to serve the best interests of the child." *Dietz v. Dietz*, 2007 ND 84, ¶ 9, 733 N.W.2d 225; *see also* N.D.C.C. § 14–09–06.6(6). Not every change in circumstances is sufficiently significant to rise to the level required under N.D.C.C. § 14–09–06.6. *Seibel v. Seibel*, 2004 ND 41, ¶ 5, 675 N.W.2d 182. We have defined a material change in circumstances as "important new facts

that were unknown at the time of the initial custody decree." *In re Thompson,* 2003 ND 61, ¶ 7, 659 N.W.2d 864; *see also* N.D.C.C. § 14–09–06.6(6)(a). "A material change of circumstances can occur if a child's present environment may endanger the child's physical or emotional health or impair the child's emotional development." *Selzler v. Selzler,* 2001 ND 138, ¶ 21, 631 N.W.2d 564. "Improvements in a non-custodial parent's situation 'accompanied by a general decline in the condition of the children with the custodial parent over the same period' may constitute a significant change in circumstances." *Kelly v. Kelly,* 2002 ND 37, ¶ 20, 640 N.W.2d 38 (quoting *Hagel v. Hagel,* 512 N.W.2d 465, 468 (N.D. 1994)).

[¶ 7] A district court's decision whether to change custody is a finding of fact subject to the clearly erroneous standard of review. *Clark v. Clark,* 2006 ND 182, ¶ 18, 721 N.W.2d 6. A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made. *Id.*

### A

[¶ 8] Stanhope contends the court erred in finding that the oldest son did not suffer from Asperger's syndrome or any other form of autism. He claims Phillips–Stanhope's refusal to accept that the oldest son has Asperger's syndrome results in her being unable to properly care for his needs. Stanhope presented the deposition testimony of Dean Beck, a licensed clinical social worker who observed the children when they were in Bismarck. Beck did not know if the oldest son had Asperger's syndrome. Stanhope also presented the testimony of Tim Gienger, a licensed clinical social worker who graduated with a master's degree in 2004. Gienger had not performed any diagnostic testing but diagnosed the oldest son with Asperger's syndrome.

[¶ 9] The district court found the opinion of the licensed psychologist the parties selected to examine the oldest son to be the most persuasive:

The parties selected Dr. Dion Darveaux, Minot, North Dakota. Dr. Darveaux has a Ph.D. in psychology, and has been in private practice in Minot for many years. Darveaux met and examined [the oldest son]. He determined that [the oldest son] did have some emotional and behavioral problems, however, he believed they stemmed primarily from the divorce of Edwin and Heather, and the continued struggle they had over custody and the children. Darveaux stated it was not unusual to see these sorts of problems in children in divorce situations.

Darveaux presented an Asperger's Syndrome diagnostic scale to seven individuals and asked them to complete the scale. The seven individuals were Heather, Edwin, Angel Stanhope, Chad Fenner (Heather's finance), Taharah Futch (the children's nanny), as well as two of [the oldest son's] teachers. Not surprisingly, Edwin and Angel Stanhope reported seeing the greatest number of Asperger's symptoms; Heather, Chad, and Taharah reported the fewest number of symptoms. [The oldest son's] teachers, the only non-biased observers, reported the existence of some symptoms. However, in the final analysis, the scale revealed that it was "unlikely" that [the oldest son] had Asperger's.

Darveaux further noted that even those symptoms that [the oldest son] did have could just as easily be the result of other conditions, and not Asperger's. The conditions he does have do not, in

Darveaux's eyes, cause significant functional impairment in school, or other social settings. [The oldest son] has nearly straight A's on his report card. And, insofar as [the oldest son's] disciplinary problems, being sent to the principal's office, Darveaux stated that this was not significant. In fact, Darveaux stated he would be more concerned about the child who did not, on occasion, get sent to the principal's office while in grade school.

. . . .

Lastly, no matter what problems [the oldest son] may have, Darveaux concluded that these problems have not caused significant impairment in [the oldest son's] academic or social functioning. This is verified by [the oldest son's] school records which show good grades, and only minor disciplinary concerns. Darveaux verified his conclusions by going to others, such as teachers and a school principal.

Based on Dr. Darveaux's conclusion, the district court found that the oldest son's "present environment, and Heather's care for him, are not endangering [his] emotional or physical health." The court also found no evidence to suggest the youngest son's mental or physical health has suffered.

[¶ 10] The district court was in a better position than this Court to weigh the evidence. The district court has the advantage of judging the credibility of witnesses by hearing and observing them and of weighing the evidence as it is introduced, rather than from a cold record. *See Ramstad v. Biewer,* 1999 ND 23, ¶ 22, 589 N.W.2d 905; *Ludwig v. Burchill,* 481 N.W.2d 464, 469 (N.D.1992). "[W]hen two parties present conflicting testimony on material issues of fact, as in the instant case, we will not redetermine the trial court's findings based upon that testimo-

ny." *Roberson v. Roberson,* 2004 ND 203, ¶ 10, 688 N.W.2d 380. A district court's choice between two permissible views of the evidence is not clearly erroneous. *Burns v. Burns,* 2007 ND 134, ¶ 9, 737 N.W.2d 243. We conclude the court's findings that the oldest son did not have Asperger's syndrome or other form of autism, that any of his emotional and behavioral problems stemmed primarily from the parties' divorce and custody dispute, and that Phillips–Stanhope's care of her sons is not endangering their emotional or physical health, are not clearly erroneous.

B

[¶ 11] Stanhope argues the district court erred in finding there had not been a decline in the condition of Phillips–Stanhope's home life since the divorce decree was entered. The court did find the "changes in Edwin's life all appear to be most certainly for the better. He has apparently advanced in his field of work. He has remarried. He has quit abusing alcohol. He has provided a good environment for the boys when they come to visit him." However, to constitute a material change in circumstances, the improvements in the noncustodial parent's situation must be accompanied by a decline in the condition of the children with the custodial parent over the same period of time. *See Kelly,* 2002 ND 37, ¶ 20, 640 N.W.2d 38. The court found that Stanhope had "little to show" to demonstrate a significant decline in Phillips–Stanhope and the children's lives.

[¶ 12] Stanhope complains the children are insufficiently supervised, are often tardy or miss school, and have disciplinary problems in school. The court found Stanhope failed "to show that this has had any negative effect on the boys," "some minor disciplinary problems should be expected as a normal part of growing up," and

"[t]here is ... no way to equate the minor troubles that the boys may have had to any failing of discipline or guidance on Heather's part." Stanhope also claims that the children do not receive proper medical care from Phillips–Stanhope for asthma, bronchitis, and other illnesses. The court found the children's "illnesses are apparently under control, or have been resolved," and "these medical concerns reflect the differing parenting styles of the couple." The court noted that Stanhope "insists upon discipline, routine, and a strict schedule," while Phillips–Stanhope "is more laid back, and believes the boys should take responsibility for taking their own medications." The court found the "differing opinions of the parties are insufficient to create need for a change of custody."

[¶ 13] Stanhope also contends that the district court gave insufficient consideration to Phillips–Stanhope's mental health problems and that she was to blame for the conflict between the parties and their inability to get along. The court addressed these concerns in its decision:

> Edwin points to Heather's history of depression. He states a concern that Heather may not be fully functioning even yet. Edwin offered nothing more than this unsubstantiated fear. The facts of this case show that Heather is fully employed as a janitor at Minot State University. She has been able to retain employment. She is apparently in a meaningful and significant personal relationship. By all outward signs, her life appears to be fairly ordinary and routine—in a word, normal. In fact, the only significant area for some concern is Heather's reaction to Edwin and Angel. She appears to have intense feelings of distrust and dislike, perhaps even hatred, for both. She is unwilling to cooperate or get along with either. With regard to this, however, two points are important. First, Angel and Edwin were involved with each other even before Edwin and Heather divorced. That Heather would hold ill feelings towards Angel is not unusual in this circumstance. Second, Edwin is trying to take custody. By its very nature the legal process is adversarial. That Heather should be angry with Edwin for his attempts to regain custody of the children is not unusual.
>
> Edwin asserts Heather is not willing to cooperate with him. He cites to numerous telephone calls and other events where Heather's attitude was unreasonable. Even if true, all this reflects upon is the unstable relationship between these two parties, and to some degree, between Heather and Angel Stanhope. It does nothing to reflect upon the lives of the boys in Minot, with Heather.
>
> . . . .
>
> Notwithstanding what Edwin believes he sees, the boys are doing well in school, they are having no major disciplinary problems, they are in reasonably good health, and there has been no showing of any significant decline within Heather's home.

[¶ 14] The district court addressed all of Stanhope's arguments in its decision and found that he did not establish a material change in circumstances to support a change of custody. On our review of the record, we are not left with a definite and firm conviction that the district court made a mistake in finding there has been no material change in circumstances.

### III

[¶ 15] Because we conclude the district court's finding of no material change in circumstances is not clearly erroneous, it is unnecessary to address Stanhope's argument that a change in custody is necessary

to serve the best interests of the children under N.D.C.C. § 14–09–06.6(6)(b). The order is affirmed.

[¶ 16] GERALD W. VANDE WALLE, C.J., SONNA M. ANDERSON, D.J., DANIEL J. CROTHERS, J., concur. DALE V. SANDSTROM, J., I concur in the result.

[¶ 17] The Honorable SONNA M. ANDERSON, D.J., sitting in place of KAPSNER, J., disqualified.