2012 ND 227

**Shannon (Fried) KRUEGER,
Plaintiff and Appellee**

v.

**HAU TRAN, Defendant and Appellant.**

**No. 20120152.**

Supreme Court of North Dakota.

Oct. 23, 2012.

Irvin B. Nodland, Bismarck, N.D., for plaintiff and appellee.

Carl L. Martineck, Valley City, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1]   Hau Tran appeals from a district court order granting Shannon Krueger's motion to modify primary residential responsibility of their child. We affirm, concluding the court's decision to modify primary residential responsibility is not clearly erroneous.

I

[¶ 2]   Tran and Krueger have one minor child together, who was born in 2001. Both parties allege the other abused drugs in the past. Both parties have drug convictions, and Krueger was incarcerated twice.

[¶ 3]   In 2005, the district court entered a judgment giving Krueger physical custody of the child based on the parties' stipulation. In 2007, the parties agreed to modify custody of the child. The court entered an amended judgment based on the parties' stipulation, ordering Tran have physical custody of the child and Krueger have visitation. The amended judgment also ordered both parties to provide the other party with any change in residence, address, or telephone number within five days of the change. There was evidence that Krueger was facing possible incarceration when the amended judgment was entered, but she completed a long-term, inpatient drug treatment program instead.

[¶ 4]   In 2008, Krueger moved to hold Tran in contempt, alleging he failed to comply with the amended judgment, he denied her visitation, he sent a text message to her cell phone advising her he was moving to Oregon with the child, and she was unable to locate Tran or the child. After a hearing, the district court entered an order finding Tran in contempt for failing to comply with the amended judgment by denying Krueger visitation and failing to give notice of his change of residence and telephone numbers. The court ordered Tran to serve sixty days in jail, with all of it conditionally suspended.

[¶ 5]   On October 18, 2010, Krueger moved to modify primary residential responsibility. Krueger alleged her life had improved and she had not used drugs since she started drug treatment, the conditions in Tran's home were highly detrimental to the child's physical and emotional health, Tran was not taking proper care of the child, Tran was abusing drugs, Tran de-

nied her access to the child, and Tran was very hostile toward her and made disparaging statements about her. A custody investigator was appointed.

[¶ 6] In December 2010, Tran petitioned for a disorderly conduct restraining order against Krueger. In a January 10, 2011, order, the district court denied Tran's petition and ordered the parties to:

not contact each other for any reason except as may be necessary to confirm exchange times and places for the child[ ] or to provide information to the other about matters related to the child's schooling, counseling, medical needs, or involvement with law enforcement other than as stated above. There shall be no contact between the two parties by any method for any other reason directly or indirectly through 3rd parties except through their respective counsel.

[¶ 7] On January 13, 2011, Krueger moved for an order to show cause and for contempt, alleging Tran failed to comply with ordered visitation. Krueger also requested the court temporarily grant her primary residential responsibility of the child. On February 25, 2011, Krueger filed an affidavit in support of her motions, alleging Tran was not complying with the January 10, 2011, order and was sending her harassing and inappropriate text messages. On August 22, 2011, Krueger renewed her motion for temporary primary residential responsibility. On September 14, 2011, the court entered an order denying Krueger's motion for an interim order, finding Krueger did not show that exceptional circumstances existed to justify an interim order for a change of residential responsibility. However, the court found:

2. Based on [Krueger's] affidavits, there are reasonable grounds to believe that Defendant Hau Tran is in contempt of previous court orders directing him to refrain from making abusive and/or derogatory communications to [Krueger].

3. Continuation of these abusive and derogatory communications by Defendant Hau Tran will constitute exceptional circumstances as defined by Rule 8.2(a)(1), in that they pose an imminent threat of psychological and emotional harm to the parties' minor child, and would necessitate an interim order to protect the child from further harm.

The court ordered Tran to comply with all previous court orders and limit communications with Krueger to matters reasonably necessary to accomplish visitation or to promote the child's welfare.

[¶ 8] On September 30, 2011, Krueger filed a motion for contempt, alleging Tran continued to send her harassing and derogatory text messages after the court's September 14, 2011, order. A hearing was held on October 31, 2011. On December 2, 2011, Krueger filed a motion for contempt, alleging Tran continued to send her derogatory text messages after the October hearing.

[¶ 9] On January 13, 2012, the district court granted Krueger's motion to modify primary residential responsibility after holding an evidentiary hearing. The court found there was a material change of circumstances, including a significant improvement in Krueger's life circumstances, accompanied by a general decline in the child's condition. The court also found Tran's lack of interaction with the child and his open hostility and contempt toward Krueger were detrimental to the child's emotional health. The court found modification was necessary to serve the child's best interests.

II

[¶ 10] Tran argues the district court's findings that there was a material change

in circumstances and that a modification of residential responsibility was in the child's best interests are clearly erroneous.

[¶ 11] A district court's decision to modify residential responsibility is a finding of fact subject to the clearly erroneous standard of review. *Stanhope v. Phillips–Stanhope*, 2008 ND 61, ¶ 7, 747 N.W.2d 79. A finding is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or we are convinced, based on the entire record, that a mistake has been made. *Id.*

[¶ 12] Under N.D.C.C. § 14–09–06.6(6), a court may modify primary residential responsibility more than two years after a prior decision establishing primary residential responsibility, if the court finds:

a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

b. The modification is necessary to serve the best interest of the child.

The party seeking modification has the burden of proving a change in residential responsibility is required. *Vining v. Renton*, 2012 ND 86, ¶ 14, 816 N.W.2d 63.

## A

[¶ 13] A material change in circumstances is an important new fact that was not known at the time of the prior residential responsibility decision. *Siewert v. Siewert*, 2008 ND 221, ¶ 17, 758 N.W.2d 691. A party's conduct before the prior residential responsibility decision may be relevant if the prior decision was based on the parties' stipulation and the district court was unaware of the facts at the time of the stipulation. *Schumacker v. Schumacker*, 2011 ND 75, ¶ 11, 796 N.W.2d 636.

Here, all of the prior residential responsibility decisions were based on the parties' stipulations. This is the first time the district court has decided a contested residential responsibility issue based on statutory requirements.

[¶ 14] " 'A material change of circumstances can occur if a child's present environment may endanger the child's physical or emotional health or impair the child's emotional development.' " *Siewert*, 2008 ND 221, ¶ 17, 758 N.W.2d 691 (quoting *Stanhope*, 2008 ND 61, ¶ 6, 747 N.W.2d 79). A material change in circumstances can exist when one parent attempts to alienate a child's affection for the other parent, when parents are openly hostile towards each other and that hostility negatively affects the child, or when the non-custodial parent's situation improves accompanied by a general decline in the child's condition with the other parent over the same time period. *Ehli v. Joyce*, 2010 ND 199, ¶ 8, 789 N.W.2d 560; *see also In re N.C.C.*, 2000 ND 129, ¶¶ 19–23, 612 N.W.2d 561.

[¶ 15] The district court found a material change in circumstances had occurred:

The Court finds [Krueger] has shown that a material change of circumstances has occurred, because the significant improvements in Ms. Krueger's life circumstances have been accompanied by a general decline in the child's condition. Specifically, based on [the child's] statements to the parenting investigator, Ms. Krueger's testimony, and Mr. Tran's text messages . . . the Court finds that Mr. Tran often leaves [the child] alone, that she feels lonely, and that [the child] prefers to be with her mother because they spend lots of time doing things together. [The child] is a preadolescent girl who wants parental interaction and guidance; Mr. Tran appears preoccupied with his own needs, and indifferent

to or perhaps unable to respond to [the child's] needs.

The Court finds that this lack of interaction, alongwith Mr. Tran's open hostility and contempt toward Ms. Krueger, is detrimental to [the child's] emotional health. A material change of circumstances can be found if the child's emotional health or development may be endangered in the present environment. *Selzler v. Selzler*, 2001 ND 138, ¶ 21, 631 N.W.2d 564. Mr. Tran's text messages alternate between unrequited love and unmitigated hatred of Ms. Krueger; based on his text messages, interviews with the parenting investigator, and in-court testimony, the court finds he is unable or unwilling to understand that his inattention to [the child], and derogatory comments about her mother, are damaging his daughter's mental and emotional welfare.

[¶ 16] The court found there was a material change in circumstances based on its finding that the child's general condition had declined while Krueger's situation had improved and that Tran's hostility toward Krueger and his lack of interaction with the child were harmful to the child's emotional health. The court's findings were based on information from the parenting investigator, Krueger's testimony, Tran's text messages to Krueger, and Tran's testimony. The evidence supports the court's findings.

[¶ 17] There was evidence Krueger's situation had improved. Krueger testified that she had not used drugs since she participated in the in-patient drug treatment program, that she has been in a relationship for more than three years with a man she met while completing drug treatment, that they were engaged to be married, that she was pregnant, and that she was employed full-time. Krueger's parole officer also testified that she is currently on parole, that she has not had any parole violations, that she has been open and honest with him, that she is employed, that she has not failed any drug tests, and that everything indicates she will continue to be successful with her parole. The evidence supports the court's finding that there have been improvements in Krueger's life.

[¶ 18] However, the court's findings about the improvements in Krueger's life alone are not sufficient to constitute a material change in circumstances. *Kelly v. Kelly*, 2002 ND 37, ¶ 20, 640 N.W.2d 38. The court must also find the improvements in the parent's life were accompanied by a general decline in the child's condition with the custodial parent. *Id.* The district court found a general decline in the child's condition based on the child's need for parental interaction and guidance, Tran's lack of interaction with the child, and Tran's hostility toward Krueger. The court found the child's environment with Tran was detrimental to her mental and emotional health. The evidence supports the court's findings.

[¶ 19] There was evidence of a general decline in the child's condition, including that the child is often left alone or left to do things with friends or a babysitter. There was evidence the child told the parenting investigator that she often feels lonely when she is with Tran because he sometimes sleeps during the day and he makes her play in her room or outside by herself. The parenting investigator testified the child told her Tran is often agitated with her and puts blankets on the windows and in the doorways. There was evidence of two reports to social services. In September 2009, the child told school officials that Tran had drugs in the home, social services investigated, and services were recommended. In April 2010, the child told a school official Tran spanked

her with a belt, social services investigated and recommended services. Tran denied using physical discipline and refused to allow social workers in his home. There was evidence school officials recommended the child see a counselor for anxiety and other issues, but Tran said the child did not need counseling.

[¶ 20] Furthermore, the court found Tran's open hostility and contempt for Krueger was detrimental to the child's health. The evidence supports this finding. The court admitted into evidence pages of text messages Tran sent to Krueger's cell phone between 2009 and 2011. Tran did not object to the admission of the text messages and he admitted he sent them. The messages showed Tran's hostility to Krueger. Tran often used profanity and offensive language in the messages, called Krueger derogatory names, referred to the child as "my daughter," and accused Krueger of not wanting the child. The messages included, "I just tell [the child] u would rather have drugs then her," "Y don't u just tell her that she wasn't planned & that she was a mistake & that u wanted 2 have her aborted," and "She will realize how much of a fucking loser u are." Tran sent Krueger multiple messages stating the child was only his child, including " & would u stop saying our daughter," "4 for the record she is my daughter not ours or yours u lost custody of her ur just her biological mother," and "Don't u ever call her our daughter that really irritates me."

[¶ 21] There was evidence Tran does not refrain from making hostile or offensive comments about Krueger in front of the child. Krueger testified the child was using Krueger's cell phone to talk to a friend and Tran sent a text message to the phone stating the child was a mistake, the child saw the message and became upset. Krueger also testified once while she was talking to the child on the phone, Tran asked the child who she was talking to, and after the child responded Tran said "oh, that fucking bitch." There was evidence from the parenting investigator that collateral contacts told her that both parents need to be more careful with what they say about the other parent to and in the presence of the child. The parenting investigator also reported:

> I believe that [Krueger] is able and trying to show respect for [Tran] and encourage the father/daughter relationship in the best interest of [the child]. However, [Tran] is clearly unable/unwilling to do the same. He consistently focuses and elaborates on [Krueger's] past as a drug abuser, what he describes as her "lies and manipulations" and shortcomings as a parent. He very likely doesn't filter what he says about [Krueger] to [the child] or in her presence. I would not expect [Tran] to be able to facilitate or encourage any relationship between [the child] and [Krueger] anytime soon. This is and probably will continue to be a very adversarial relationship.

[¶ 22] Although there was evidence and the court found the child was a well-behaved child and was doing well in school, there was also evidence the hostility and parental conflict has negatively affected the child. The parenting investigator reported the child occasionally struggled with focus at school and school staff believed it was caused by family and personal concerns. On September 4, 2010, Tran sent Krueger a text message stating, "I had a message from [the child's] counselor they want 2 meet with me & talk about her missing mom, even the school is worried about her." The parenting investigator testified that Tran's hostility toward Krueger was having a negative effect on the child. She testified the child needs more time with Krueger as the child gets

older and Tran is not allowing that to happen, which is having a negative effect on the child. There was other evidence Tran has disregarded the negative effect his behavior has on the child. In October 2010, Krueger sent Tran a text message stating, "... she hates u for keeping her from me but u don't seem to care," and Tran responded, "I don't." The evidence supports the court's finding that the hostility was negatively affecting the child.

[¶ 23] In other cases with similar circumstances, we have held the hostility between the parents and the negative impact on the children was a material change. In *Siewert*, 2008 ND 221, ¶ 5, 758 N.W.2d 691, there was evidence of hostility between the father, the father's new wife, and the mother, and there was evidence the children had anxiety over their parents' relationship. We held the evidence supported the district court's finding that the father's remarriage, the hostility between the adults, and the impact the hostility was having on the children was a material change in circumstances. *Id.* at ¶ 18. In *N.C.C.*, 2000 ND 129, ¶¶ 19–23, 612 N.W.2d 561, this Court affirmed the district court's finding of a material change in circumstances based on evidence the mother repeatedly frustrated the father's visitation, the mother attempted to alienate the father from the child, the mother failed to cooperate with social services' efforts to provide assistance for the child, and the father made improvements in his life.

[¶ 24] We conclude the evidence supports the court's findings of a material change in circumstances and we are not convinced a mistake has been made.

### B

[¶ 25] If the court finds there is a material change in circumstances, the court cannot modify primary residential responsibility unless it also finds the modi-fication is necessary to serve the child's best interests. N.D.C.C. § 14–09–06.6(6)(b). The court must consider the best interest factors set out in N.D.C.C. § 14–09–06.2(1). *Siewert*, 2008 ND 221, ¶ 19, 758 N.W.2d 691. The court must also consider the best interest factors in light of two additional considerations:

> First, the best interests of the child factors must be gauged against the backdrop of the stability of the child's relationship with the custodial parent, because that stability is the primary concern in a change of custody proceeding. Second, after balancing the child's best interests and stability with the custodial parent, the [district] court must conclude that a change in the status quo is required. A child is presumed to be better off with the custodial parent, and close calls should be resolved in favor of continuing custody. A change should only be made when the reasons for transferring custody substantially outweigh the child's stability with the custodial parent.

*Vining*, 2012 ND 86, ¶ 17, 816 N.W.2d 63 (quoting *Myers v. Myers*, 1999 ND 194, ¶ 10, 601 N.W.2d 264).

[¶ 26] Here, the district court applied the statutory best interest factors and made findings about each factor. The court found most of the factors favored Krueger, and only factor (d), the sufficiency and stability of each parent's home environment and the length of time the child has lived with each parent, favored Tran.

[¶ 27] The court found factor (a), the ability of each parent to provide the child with nurture, love, affection, and guidance, favored Krueger:

> Both parents love [the child], and she expresses love and affection for each of them. However, Mr. Tran's capacity for nurture and guidance appears to be lim-

ited by his own emotional issues. He seems incapable of admitting, let alone resolving, his love/hate feelings for Ms. Krueger, and is extremely guarded and unwilling to admit any faults or mistakes. These traits were evident in his testimony and his contacts with the parenting investigator. He seems preoccupied with his own needs, and [the child] says she is frequently left alone. Ms. Krueger is open about her mistakes and failings, more attuned to her daughter's needs, and has a much greater capacity for emotional interaction and nurturing.

The court also found these same reasons limited Tran's ability to meet the child's developmental needs, and therefore factor (c), the ability of each parent to meet the child's developmental needs, favored Krueger. The court further found:

Mr. Tran's text messages exhibit a coarse, chauvinistic attitude toward women ... which the court finds will be highly detrimental to [the child's] emotional and moral development as she enters adolescence; moreover, he is either unaware or unconcerned that [the child] is hurt by his attitude and comments toward Ms. Krueger.

[¶ 28] The court found factor (e), the willingness of each parent to facilitate and encourage a relationship between the child and the other parent, favored Krueger:

This factor weighs strongly against Mr. Tran. It is abundantly clear that he will not, quite possibly cannot, restrain himself from making demeaning, abusive, and profane remarks about Ms. Krueger, and that he intends to undermine [the child's] relationship with her mother. For example, he asked [the child] why she was talking to that "f—ing bitch" while she was on the phone with her mother. He pointedly refers to [the child] as "my daughter" in several text messages.... On June 13, 2010, he

sent a text message that said: "I just tell [the child] u would rather have drugs then her." ... He was cited for contempt in 2008 for willful denial of Ms. Krueger's visitation rights. He has been undeterred both by orders and admonitions from courts to stop his abusive conduct [*see* Order dated Sept. 14, 2011 ... ], and by the knowledge that [the child] is upset and hurt by his comments and behavior.

[¶ 29] In applying factor (g), the court considered the parents' mental and physical health and found:

Both parents seem to be in good physical health and have the ability to care for [the child]. Ms. Krueger has anxiety and a long-standing addiction to meth and other drugs; however, she is in treatment for both conditions, has remained drug-free for approximately three years, and appears committed to improving her life. She will be on supervised probation until 2013, and her probation officer said he believed her chances of completing probation successfully are "positive."

Mr. Tran's denials that he has ever had a drug problem are not particularly credible, but it does not appear to be a problem currently; however, he clearly has unresolved anger and self-esteem issues. His overall mental health is difficult to assess because he emphatically denies that any issues exist.

The court finds this factor favors Ms. Krueger because she is receiving treatment, and Mr. Tran's refusal to acknowledge and deal with his own issues is harmful to [the child's] welfare.

[¶ 30] After finding the best interest factors favored Krueger, the court weighed custodial stability and the child's best interests and considered whether a change in residential responsibility is necessary:

The court is mindful of the importance of custodial stability, and Mr. Tran deserves credit for being a parent to [the child] while her mother was consumed by, and incarcerated for, her addictions. After long consideration, however, the court finds that changing primary residential responsibility is required because Mr. Tran's attitude, words, and behavior toward Ms. Krueger and women generally, and his inability to see how his conduct affects [the child], pose a high risk to [the child's] emotional health as she enters adolescence. Based on Mr. Tran's history of disregard, often open contempt, for court orders and admonitions to stop his derogatory comments and abusive conduct, and after observing him in court, the court finds it is highly unlikely that he can or will change his behavior, regardless of its impact on [the child].

The court concluded, "its concerns for [the child's] psychological and emotional health substantially outweigh the interest in stability with her custodial parent, and therefore awarding primary residential responsibility to Ms. Krueger is necessary in [the child's] best interests."

[¶ 31] Tran argues there was no evidence the child was suffering emotionally or developmentally, a change in residential responsibility was not necessary, and the court should have taken other steps to address the hostility between the parties.

[¶ 32] A parent's attempt to alienate a child from the other parent is relevant in deciding whether modification is necessary to serve the child's best interests. *N.C.C.,* 2000 ND 129, ¶ 29, 612 N.W.2d 561. We have said a healthy relationship between the child and both parents is presumed to be in the child's best interests and the parent with residential responsibility has a duty not to alienate the child from the other parent by "poi-

soning the well." *Hurt v. Hurt,* 2001 ND 13, ¶ 14, 621 N.W.2d 326; *see also Klein v. Larson,* 2006 ND 236, ¶ 26, 724 N.W.2d 565. A parent's open hostility toward the other parent and attempts to alienate the child from the noncustodial parent may work against the child's best interests. *See Roberson v. Roberson,* 2004 ND 203, ¶¶ 12–13, 688 N.W.2d 380. We have said alienating behavior can weigh against the child's best interests even if the child is a happy normal child with strong bonds of attachment to the parent with residential responsibility. *See Sweeney v. Sweeney,* 2002 ND 206, ¶ 12, 654 N.W.2d 407; *see also Vining,* 2012 ND 86, ¶ 23, 816 N.W.2d 63. "Methods other than a change of [residential responsibility] should be used initially to attempt to remedy a parent's misbehavior, but, after exhausting other remedies, a change in [residential responsibility] may be the only method to correct the damage of a particularly stubborn and defiant custodial parent, and if alternative remedies fail the district court should consider a change in [residential responsibility]." *Frieze v. Frieze,* 2005 ND 53, ¶ 4, 692 N.W.2d 912; *see also Sweeney,* at ¶ 11; *Loll v. Loll,* 1997 ND 51, ¶ 16, 561 N.W.2d 625.

[¶ 33] In this case, there was evidence the parties have difficulty communicating and cooperating with each other, Tran is extremely hostile toward Krueger, he refuses to stop making abusive and derogatory comments to Krueger, he does not refrain from making abusive comments about Krueger when the child is present, and the hostility has negatively affected the child. The court attempted other methods to remedy Tran's misbehavior before deciding modification of residential responsibility was necessary.

[¶ 34] In 2008, Krueger moved to hold Tran in contempt, alleging he sent her text messages informing her he was moving to

Oregon with the child, but he refused to give her any other information and she was unable to locate the child or Tran. The court found Tran was in contempt for his failure to give notice of his change of residence and his failure to comply with ordered visitation. After the 2008 contempt order, Tran continued to send Krueger text messages stating that he was relocating with the child or that they had already moved without giving Krueger specific information about where they were living. On August 15, 2010, Tran sent Krueger a text message stating, "By the way we r moving this weekend goodbye," and he sent a second message two days later stating, "... & we moved we don't live here anymore." In September 2010, Tran sent Krueger text messages about future plans to move and stated, "Ya but im hoping c move far enough from u hopefully far enough so u cant bother me," and "Ohh but I am id like her 2 get away from u also." In February 2011, Tran sent Krueger a text message advising her he was moving to Florida with the child.

[¶ 35]   In a January 2011 order denying Tran's petition for a restraining order, the court ordered the parties not to contact each other for any reason except to confirm exchange times for parenting time or for information about the child's schooling or medical needs. In January 2011, Krueger moved to hold Tran in contempt alleging he failed to comply with visitation and she also requested an emergency interim order temporarily modifying residential responsibility. In February, Krueger filed an affidavit in support of her motion alleging Tran was not complying with the January 2011 order and was sending her harassing text messages. There was evidence supporting Krueger's allegation that Tran continued to send her harassing text messages despite the court order. There was evidence the text messages continued after Krueger filed her February affidavit

and Krueger renewed her motion for an interim order. On September 14, 2011, the court denied Krueger's motion for an interim order, but found there were reasonable grounds to believe Tran was in contempt of prior orders directing him to refrain from making abusive and derogatory comments to Krueger. The court advised Tran that the continuation of this misbehavior would constitute exceptional circumstances and would necessitate an interim order. On September 30, 2011, Krueger filed another motion for contempt alleging Tran continued to send her abusive and derogatory text messages. There was evidence Tran continued to send Krueger derogatory text messages after the September 14, 2011, order, including a text message on September 23, 2011, responding to Krueger's reference to "our daughter" in a prior message by texting "My daughter." A hearing was held in October 2011; however, we do not have a transcript of that hearing and the court did not enter a written order. In December 2011, Krueger filed another motion for contempt. There was evidence Tran continued to send Krueger abusive and derogatory text messages, including messages that the child does not need her and messages using abusive and derogatory language.

[¶ 36]   Tran was held in contempt, the court advised him that his continued misbehavior would constitute exceptional circumstances for purposes of an interim order, and Tran continued to disregard the court's orders and warnings. The court found Tran's behavior was unlikely to change given his history of disregard for and often open contempt of court orders and admonitions. The court concluded modification was necessary because of the concern for the child's psychological and emotional health due to Tran's behavior.

[¶ 37] The court applied the proper best interest analysis, the evidence supports the court's findings, and we are not left with a definite and firm conviction a mistake has been made. We conclude the court's decision to modify primary residential responsibility is not clearly erroneous.

### III

[¶ 38] We affirm the district court's decision modifying residential responsibility.

[¶ 39] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

DALE V. SANDSTROM, J., concurs in the result.