PEATROSS, J.
 

 | defendant, Neyland Turner, pled guilty to two counts of distribution of marijuana, two counts of possession of marijuana with intent to distribute, possession of a firearm by a convicted felon, possession of alprazolam (Xanax) and possession of ben-zylpiperazine (Ecstasy). He was sentenced to 12 years at hard labor for each count of distribution of marijuana, 12 years at hard labor for each count of possession of marijuana with intent to distribute, 12 years at hard labor for possession of a firearm by a convicted felon and five years each for the charges of possession of al-prazolam and benzylpiperazine. The sentences were ordered to run concurrently. Defendant reserved the right to appeal any pretrial motions, including a motion to suppress under
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976). Defendant now appeals. For the reasons stated herein, two of the sentences imposed are amended to reflect that they are to be served without benefit of probation, parole or suspension of sentence. In all other respects, Defendant’s convictions and sentences are affirmed.
 

 FACTS
 

 Defendant, Neyland Turner, was stopped for a traffic violation in Monroe, Louisiana, on December 22, 2009. While he was stopped, the officer observed marijuana in plain view in the vehicle Defendant was driving. Defendant was arrested at that time. Defendant was also the sub
 
 *452
 
 ject of an ongoing narcotics investigation at the time of his arrest. A search warrant was issued the night of his arrest for the residence and curtilage of the address from which he was apparently operating his drug business. Pursuant to the warrant, a search of the residence and a vehicle 12parked in front of the residence resulted in the seizure of more marijuana, a firearm and two illegal drugs, Xanax and Ecstasy. In addition, Defendant had previously been convicted of aggravated battery (a felony) and his parole had been revoked. He had also been convicted of attempted possession of marijuana. On the current offense, Defendant was charged by bill of information with two counts of distribution of marijuana, two counts of possession of marijuana with intent to distribute, one count of possession of a firearm by a convicted felon, one count of possession of a controlled dangerous substance, alprazolam, and one count of possession of a controlled dangerous substance, benzylpiperazine.
 

 At the preliminary examination on April 7, 2010, the following facts were gleaned from the testimony of the State’s only witness, Officer Casey Baker of the Monroe Police Department. Officer Baker testified that, on December 22, 2009, he witnessed Defendant make a “left of center violation” on Owl Street and initiated a traffic stop. Officer Brandon Waggoner was with Officer Baker.
 

 Defendant appeared very nervous. The officers asked for his registration and insurance, and he walked around his car three times before he decided to open the passenger door. Officer Waggoner stood next to Defendant on the passenger’s side of the vehicle and Officer Baker stood by the driver’s side door and shone his flashlight into the vehicle because it was very dark. Officer Baker testified that he did so for officer safety reasons and to assist Defendant in locating the paperwork in the glove box.
 

 | ^Officer Baker further testified that the window was open and he looked down and saw in plain view a clear plastic bag of what appeared to be marijuana in the door handle of the driver’s side door. Officer Baker then told Officer Waggoner to arrest Defendant and to read him his
 
 Miranda
 
 rights and Officer Baker reached in and retrieved the bag of marijuana. After Defendant was read his
 
 Miranda
 
 warning, Officer Baker asked him if there was any more marijuana in the vehicle. Defendant replied that there was some in the back seat in a bag. Officer Baker retrieved a camouflage backpack in the back seat area of the vehicle that contained several different sized bags of marijuana. The total weight of the marijuana was just over 12 ½ ounces and it was bagged in 28 bags. This material was tested and confirmed to be marijuana.
 

 A search was done of Defendant’s person which revealed $393 from his pocket in small denominations of fives, tens and twenties. Fifty dollars of that money was prerecorded Monroe Police Department buy money that was part of an investigation being conducted by Corporal Scotty Sadler.
 

 Defendant was subsequently transported to Ouachita Correctional Center (“OCC”) and another search of his person was conducted. A guard at OCC located $2,228 in small denominations. That same night, Corporal Sadler obtained a search warrant for a residence at 3620 Curry Street, where police had observed Defendant. A search of the residence yielded a large amount of marijuana, a gun and other items of contraband. When questioned about the address, Officer Baker responded, “It’s not my case. I don’t have the report. I think it was 3620 Curry.” He further | ¿testified that he was trying to go
 
 *453
 
 from memory and stated that Corporal Sadler had the case and that, “He wrote the search warrant based off his investigation that was already ongoing.”
 

 At that point in the preliminary examination, the defense attorney objected to Officer Baker’s testifying as to Corporal Sadler’s report, but the district attorney argued that hearsay is admissible at a preliminary examination. Officer Baker stated that Corporal Sadler was in Utah and unavailable to testify; the evidence was admitted over objection.
 

 In response to further questioning, Officer Baker testified that the current investigation of Defendant was connected to the investigation being performed by Corporal Sadler prior to the stop on December 22, 2009. Officer Baker further testified that, according to the report he was reviewing while testifying, Corporal Sadler had observed a confidential informant and Defendant making a hand-to-hand drug transaction on December 16, 2009, at the front door of the Powell Street recreation center in Monroe. The report then revealed that the following day, December 17, 2009, Corporal Sadler had observed Defendant retrieve a backpack from his maroon 1999 GMC Denali bearing license plate number TBD 950. Defendant then sold marijuana to a confidential informant who paid for the drug with buy money marked by the police department.
 

 Officer Baker then testified that the report reflected that Corporal Sadler and another officer had observed Defendant leaving the residence at 3620 Curry Street in the same GMC Denali that had been described earlier. Also, on December 22, 2009, the day of the instant traffic stop, Corporal | ¡jSadler and the other officer had observed Defendant, with the camouflage backpack, leaving the 3620 Curry Street address. Defendant drove to the Powell Street recreation center and, thereafter, was involved in the traffic stop which yielded the 28 bags of marijuana. Although Officers Baker and Waggoner made the traffic stop, the officers of the Specialized Neighborhood Action Program (“SNAP”) team arrived soon thereafter.
 

 Officer Baker was then questioned about the search warrant that was issued for 3620 Curry Street. He testified that the search warrant was the end result of Corporal Sadler’s ongoing investigation. He stated that, with Defendant in custody from the traffic stop and the charges resulting from that stop, the police “knew that his house was secure and the evidence was not in grave jeopardy of being destroyed.” A canine search outside the residence at 3620 Curry Street indicated the presence of drugs and the search warrant was executed at 10:00 p.m., December 22, 2009, while Defendant was being detained on the charges pursuant to the traffic stop.
 

 The officers executing the warrant gained access to the residence with keys taken from Defendant following his arrest. Once inside, officers observed “a pair of scissors, a set of digital scales, loose marijuana scattered about the room, and several empty boxes of sandwich bags.” A monitoring system had been set up in the residence, which was described as a TV screen divided into four different smaller screens that monitored activity outside of the residence from four different cameras. One of the cameras was pointed at a Honda Accord or Civic sitting in the front yard. One of Defendant’s keys unlocked the Honda and it was searched. Inside the | (¡vehicle was 4 1/2 pounds of suspected marijuana and a .22 caliber Smith and Wesson pistol with six live rounds in it. The marijuana was packaged in seven large bags.
 

 A continued search of the residence revealed more marijuana and 150 Ecstasy tablets. The officers also located false bot
 
 *454
 
 tomed cans, one of which contained a Xa-nax bar. The officers also found an envelope containing Xanax and a bag containing two yellow tablets which were later determined to be Ecstasy. Officer Baker also testified that a piece of mail had been found at the Curry Street address bearing Defendant’s name.
 

 On cross-examination, Officer Baker identified photographs taken by him of items removed from the GMC Denali after the traffic stop of Defendant on December 22, 2009. Officer Baker testified that the photographs were taken with a telephone camera issued to the Monroe Police Department officers. One of the photographs showed the camouflage backpack located in the back seat of Defendant’s Denali. The date stamped on the photo was “1-13-2003.” Officer Baker stated he did not know that the camera printed the dates when pictures were taken with the phone; however, he testified that items removed from Defendant’s vehicle that day were photographed. Officer Baker testified that, if any of the photographs had been printed, they would be in Corporal Sadler’s case file.
 
 [1]
 

 Following the completion of testimony from Officer Baker, the district attorney indicated that the State would not be introducing evidence 17on Counts 3 and 4 of the bill of information. The trial judge found probable cause for Counts 1, 2, 5, 6, 7, 8 and 9 set forth in the bill of information.
 

 On June 21, 2010, a hearing was held on a motion to suppress evidence filed by Defendant.
 
 [2]
 
 In his written motion to suppress, Defendant sought the exclusion of all property seized on the ground that it was seized without the benefit of a valid search warrant. At the hearing, Defendant further argued that the evidence seized from the Curry Street residence and the Honda vehicle on the Curry Street premises should be suppressed because he did not have care, custody or control of those premises or the vehicle. He further sought suppression of the marijuana found in the vehicle during the traffic stop. Finally, Defendant challenged the introduction of photographs bearing an incorrect date stamp.
 

 The State called Officer Baker as its first witness. Officer Baker testified that Defendant was being followed as part of an ongoing investigation. Officer Baker stated that he observed Defendant cross the centerline and that was the justification for the traffic stop. He reiterated all of the evidence regarding the stop, the fact that the marijuana was in plain view and the fact that, after Defendant was
 
 Mirandized,
 
 he had advised the officers that there was more marijuana in the back seat of his vehicle. Officer Baker stated that, after the traffic stop and arrest of Defendant, he accompanied Corporal Sadler to 3620 Curry Street. Officer Baker also testified that a pat down search of Defendant yielded a ring of keys, house keys and vehicle keys, which he turned over to Corporal Sadler.
 

 IsOfficer Baker further explained that, as he approached Defendant’s vehicle at the traffic stop, he noticed an odor of burning marijuana coming from inside the vehicle and that the driver’s window was open. Thus, he was able to look down and see the bagged marijuana located on the
 
 *455
 
 armrest of the door. He stated that he did not ask for permission to search the vehicle once he noticed the marijuana. Rather, he asked the other officer present to read Defendant his
 
 Miranda
 
 warning and then Officer Baker reached inside the car and recovered the marijuana that was in plain view.
 

 Officer Baker also testified that Defendant did not provide consent to search the Denali and the backpack on the back seat was closed, there was never a search warrant issued to search the Denali and the vehicle was never towed and no inventory search done. The marijuana in the backpack was discovered because Officer Baker asked if there was more marijuana in the car and Defendant advised him that there was more marijuana in the backpack. Officer Baker testified that he was looking for contraband, not a weapon.
 

 Officer Baker further testified that the keys taken from Defendant were confiscated pursuant to a search incident to arrest before he was transported to OCC. He stated that someone on the SNAP team drove the GMC Denali to 3620 Curry Street instead of having the vehicle towed. The GMC Denali was subsequently released to an individual connected to Defendant.
 

 After the search warrant arrived at the Curry Street address, the officers used one of the keys taken from Defendant to open the door to the |9residence. Officer Baker testified that he helped search the residence pursuant to the warrant. He testified that he recovered a .22 caliber pistol with six live rounds under the driver’s seat of the 1985 Honda, a WD40 can with a false bottom that contained 30 tablets of suspected Ecstasy from the computer table in the living room and another can with a false bottom that did not contain anything. Officer Baker stated that he had entered the Honda pursuant to the search warrant and believed he obtained access to it with one of the keys that had been taken from Defendant.
 

 During questioning, Officer Baker examined the search warrant and was asked what area it covered, and he stated, “The residence and curtilage located at 50-For some reason the search warrant says 503 South 24th.”
 
 [3]
 
 He noted that there was a typographical error and that the signed affidavit established that there was probable cause to make a search of a residence located at 3620 Curry Street. The search warrant actually described the residence and stated it “is the seventh house on the south side of the roadway as one east on Curry St. from Cairo Street. There is a wooden sign |inon the front porch leading up to the front door. The sign reads in [sic ] 3620 Curry in black writing.”
 

 Corporal Sadler testified next. Corporal Sadler related that, on December 22, 2009, Defendant was under surveillance by his team because a reliable confidential informant was supposed to conduct a buy from him that day. Corporal Sadler testified that he had observed Defendant leave the house on Curry Street and go to the
 
 *456
 
 Powell Street recreation center where the sale took place. After the transaction, the confidential informant told Corporal Sadler that Defendant had marijuana in the backpack he was carrying. Defendant left the Powell Street recreation center and Officers Baker and Waggoner were to follow him and keep him under observation. The officers subsequently called Corporal Sad-ler and informed him that Defendant had just committed a traffic violation. Corporal Sadler instructed them to make the stop. Corporal Sadler further testified that he received the set of keys from Officers Baker and Waggoner, but he could not remember exactly when they were given to him.
 

 According to Corporal Sadler, Defendant denied any knowledge about the house on Curry Street, even though Corporal Sadler had seen him there earlier in the day. Corporal Sadler explained in his testimony that he conducted a canine sniff of the exterior of the house some time between the traffic stop and the time the search warrant was issued and that the dog had alerted. Corporal Sadler also explained that there was a typographical error on the search warrant because the warrant had the residence to be searched as 503 South 24th Street; but, in the same paragraph, the correct address of |n3620 Curry Street was listed, and the exact location of the house to be searched was described correctly as the house located on Curry Street.
 

 Corporal Sadler was asked why he believed the address on Curry Street was Defendant’s address, and he stated that he had seen Defendant at the residence earlier in the day. He also testified that a card was found in the southeast bedroom bearing Defendant’s name. In addition, although the house on Curry Street did not appear to have anyone living there, Corporal Sadler testified that a search of Defendant’s name in the police department computer revealed that the Curry Street address was one of the addresses that was identified with Defendant.
 

 Regarding the Honda vehicle parked in the driveway, Corporal Sadler testified that it was registered to Defendant and the registration was found in the glove box of the vehicle.
 

 Corporal Sadler next testified that he took certain pictures at the Curry Street address with his own camera and that the date on the pictures was incorrect. He testified that the batteries in his camera often run down, and that each time he changes the battery, the camera resets the date to January 1, 2003; therefore, the pictures are dated January 13, 2003, because he had changed his battery 13 days before.
 

 At the conclusion of the hearing, the trial judge denied the motion to suppress the evidence. The judge found that Defendant had conceded that the law is clear that a typographical or a non-substantive error in the warrant does not make the warrant defective if the warrant is substantively correct, and he found the warrant to be substantively correct. He further found that 112Pefendant had control or custody of the home and the car located at 3620 Curry Street. He found that the warrant provided that the curtilage could be searched and that would include a vehicle.
 

 The trial judge also denied the motion to suppress the photographs bearing incorrect date stamps. The trial judge stated that the explanation given by Corporal Sadler was reasonable, and that, when the batteries are changed in digital cameras, some reset to the original date. The judge did not believe the incorrect date would cause a jury any confusion and he denied the motion to suppress on that basis.
 

 
 *457
 
 Finally, the trial judge denied the motion to suppress the evidence seized during the traffic stop and found that there had been testimony given that showed that the stop was not pretextual.
 

 The matter proceeded to trial by jury; however, in the third day of trial, Defendant indicated his desire to accept a plea bargain that had been previously offered by the State whereby he would plead guilty to two counts of distribution of marijuana, two counts of possession of marijuana with intent to distribute, one count of possession of a firearm by a convicted felon, one count of possession of a controlled dangerous substance, alprazolam, and one count of possession of a controlled dangerous substance, benzylpiperazine. In exchange for the guilty plea, the State agreed not to multi-bill Defendant and that any sentences imposed by the trial judge would be served concurrently. Defendant reserved the right to appeal the denial of the motion to suppress under
 
 Crosby, supra.
 

 | ]30n September 15, 2010, the trial judge accepted Defendant’s guilty plea on the seven counts against him. A presentence investigation report was ordered. On November 18, 2010, the trial judge sentenced Defendant to 12 years at hard labor for each count of distribution of marijuana; 12 years at hard labor for each count of possession of marijuana with intent to distribute; 12 years at hard labor for possession of a firearm by a convicted felon; 5 years at hard labor for possession of alprazolam; and 5 years at hard labor for possession of benzylpiperazine, with credit for time served. The sentences were to be served concurrently with each other and with any other time Defendant might be required to serve.
 

 Defendant filed the instant appeal seeking review of the judgment denying his motion to suppress evidence seized during the traffic stop and the evidence seized inside the residence and Honda vehicle located at 3620 Curry Street.
 

 DISCUSSION
 

 Assignment of Error Number One (verbatim):
 
 The trial court erred by finding that the State of Louisiana established sufficient probable cause to hold defendant for trial.
 

 Pro Se Assignment of Error Number Two (verbatim):
 
 The District Court improperly found the State of Louisiana (Parish of Ouachita) carried its burden of proof in the preliminary examination was sufficient.
 

 For clarity and brevity, the assignments of error filed by Defendant’s appellate counsel and by Defendant,
 
 pro se,
 
 are addressed together where possible in this opinion.
 

 Defendant first argues that the trial court erred in finding sufficient probable cause to hold Defendant for trial when it introduced only the]_ytestimony of Officer Baker, who made the traffic stop and who had no independent knowledge of other crimes for which Defendant was charged. At the time of the preliminary examination, when the district attorney attempted to establish facts relevant to the other charges that were based on circumstances outside the traffic stop, including the two sales of marijuana in mid-December 2009, the defense attorney objected to the use of Officer Baker’s testimony. The district attorney replied that hearsay could be used to establish probable cause. The trial court agreed and allowed Officer Baker to testify regarding the traffic stop, the search of the Curry Street residence and the search of the vehicle in the driveway. Defendant argues that, while hearsay may be admissible during a preliminary examination, it cannot substitute for a witness who totally lacks any knowledge of the
 
 *458
 
 events to which he is testifying. We are, therefore, not persuaded by Defendant’s arguments.
 

 Any issue concerning probable cause to charge a defendant with an offense at the preliminary examination is moot after conviction. La. C. Cr. P. arts. 296, 298. An evidentiary shortfall to establish probable cause at the preliminary examination entitles the defendant only to relief from custody or bail and does not prevent the state from proceeding against him. A conditioned plea at the preliminary examination may be utilized only to secure review of such fundamental errors as would mandate reversal after trial on the merits. See
 
 State v. Daniels,
 
 25,833 (La.App.2d Cir.3/30/94), 634 So.2d 962.
 

 11fiIn
 
 Daniels, supra,
 
 the defendant pled guilty to a charge of possession of a controlled dangerous substance and reserved his challenge to rulings on the preliminary examination and a motion to suppress. On appeal, the defendant’s first assignment of error asserted that, at the preliminary examination, the trial court erred in finding probable cause to charge him with the offense. This court found that, even if that position proved tenable, the issue was moot. No preliminary examination shall be held invalid because of an error that does not substantially prejudice the defendant. Since an evidentiary shortfall at that stage of the proceedings only entitles a defendant to release from custody or bail and does not prevent the state from proceeding against him, there could be no showing of prejudice.
 
 Daniels, supra.
 

 In the case
 
 sub judice,
 
 we conclude, therefore, that any issue concerning probable cause is moot after Defendant’s conviction. Defendant has not made any allegations of fundamental errors that would have mandated a reversal of the conviction.
 
 Assignment of Error Number Two (verbatim):
 
 The trial court committed error in denying defendant’s motion to suppress regarding the use of defective camera equipment to preserve the evidence.
 

 Pro Se Assignment of Error Number One (verbatim):
 
 How admissible is defective equipment usage of law enforcement officers preserving evidence versus inadmissible evidence?
 

 Defendant next argues that the trial court erred in refusing to suppress the evidence of 41 photographs taken of items seized or viewed as evidence after entry into the Curry Street residence and the Honda vehicle parked in the driveway. Defendant argues that he requested permission to have the |ir,camera with which the pictures were taken examined by an expert because the printed photographs were marked with an improper date by the camera. Defendant claims the inspection was essential and the refusal to allow the inspection was error.
 

 This court reviews the district court’s ruling on a motion to suppress under the manifest error standard in regard to factual determinations, while applying a
 
 de novo
 
 review to its findings of law.
 
 State v. Hemphill,
 
 41,526 (La.App.2d Cir.11/17/06), 942 So.2d 1263,
 
 writ denied,
 
 06-2976 (La.3/9/07), 949 So.2d 441,
 
 citing State ex rel. Thibodeaux v. State,
 
 01-2510 (La.3/08/02), 811 So.2d 875. In reviewing the correctness of the trial court’s pretrial ruling on a motion to suppress, the appellate court may review the entire record, including testimony at trial.
 
 State v. Young,
 
 39,546 (La.App.2d Cir.3/02/05), 895 So.2d 753,
 
 citing State v. Sherman,
 
 04-1019 (La.10/29/04), 886 So.2d 1116. Great weight is placed on the trial court’s ruling on a motion to suppress in regard to the findings of fact because it had the opportunity to observe the witnesses and weigh the credibility of their testimony.
 
 State v.
 
 
 *459
 

 Crews,
 
 28,153 (La.App.2d Cir.5/08/96), 674 So.2d 1082,
 
 citing State v. Jackson,
 
 26,138 (La.App.2d Cir.8/17/94), 641 So.2d 1081.
 

 As previously stated, Defendant complains about photographs that were taken at the scene of the Curry Street residence where evidence of the crime was seized on December 22, 2010, but which bore date stamps of January 13, 2003. Corporal Sadler explained in his testimony at the motion to suppress that the problem was caused by his replacement of the batteries | l7in his camera 13 days prior to December 22, 2010. The trial court found Corporal Sadler’s explanation to be plausible and we agree. In addition, we find that the introduction of the photographs would neither have affected the determination of guilt, nor resulted in reversible error had they been introduced to the jury. The trial court’s judgment is entitled to great weight; therefore, we find these assignments of error to be without merit.
 

 Assignment of Error Number Three (verbatim):
 
 The trial court committed error in allowing a search warrant to be valid when the address listed was incorrect.
 

 Pro Se Assignment of Error Number Three (verbatim):
 
 How can a(6) six month investigation (informant motivated) render an invalidated search warrant? Shows unenforceable!
 

 In assignments of error number 3, Defendant argues that the address listed on the search warrant was not correct; and, therefore, all of the evidence seized from the residence at 3620 Curry Street and from the Honda vehicle located in the curtilage of the residence should have been suppressed. Defendant submits that the jurisprudence and the statute authorizing the issuance of a search warrant prescribes that the listing of the wrong address is manifest error and that the evidence seized pursuant to such a warrant is fruit of the poisonous tree.
 

 The State counters by emphasizing Corporal Sadler’s testimony during the hearing on the motion to suppress wherein he explained that the listing of “502 South 24th Street” on the search warrant was a typographical error and that the South 24th Street address was listed on a previous search warrant saved on his computer, The address was mistakenly not changed to the Curry Street address when the Curry Street warrant was printed, 118Corporal Sadler pointed out that the instant search warrant contains a description of the residence to be searched as a white color wood frame house with white trim and that it was the seventh house on the south side of the roadway on Curry Street. He further testified that the house located at 503 South 24th Street is yellow.
 

 The description contained in the search warrant is adequate if it is sufficiently detailed so as to allow the officers to locate the property with reasonable certainty and with reasonable probability that they will not search the wrong premises.
 
 State v. Korman,
 
 379 So.2d 1061 (La.1980);
 
 State v. Petta,
 
 354 So.2d 563 (La.1978);
 
 State v. Cobbs,
 
 350 So.2d 168 (La.1977). Hence, “a minor error in a portion of the description of the premises to be searched does not invalidate the search.”
 
 Korman, supra.
 
 If, however, police officers knowingly search an entirely different premises than that described in the warrant, the evidence seized will be suppressed because the warrant did not particularly describe the place to be searched.
 
 State v. Manzella,
 
 392 So.2d 403 (La.1980).
 

 In this case, the warrant described the house to be searched in enough detail that the police were able to locate the property with reasonable certainty. In fact, Corporal Sadler had been conducting an investigation into Defendant’s activity and had personally witnessed Defendant leaving
 
 *460
 
 the premises on the day of his arrest carrying the camouflage backpack from that house on his way to meet the confidential informant at the Powell Street recreation center to make the drug buy. Moreover, Corporal Sadler was present at the search of the premises. His testimony, explaining that the |iaaddress of 24th Street was left over from a warrant issued in a previous case, was plausible. We find no error in the denial of the motion to suppress because the warrant happened to contain a typographical error. These assignments of error are without merit.
 

 Assignment of Error Number Four (verbatim):
 
 The trial court erred in failing to suppress evidence discovered and seized by an officer making a traffic (stop) relying on the information from an officer not present.
 

 Pro Se Assignment of Error Number Four (verbatim):
 
 Unconstitutional (unappropriate) vehicle stop; be looked upon as fruitful? No subpoena, no summons, no ticket given for alleged traffic violation.
 

 Defendant next argues that the trial judge erred in failing to suppress evidence discovered and seized by Officer Baker because Officer Baker relied on a request by Corporal Sadler to make the stop of Defendant based on information Corporal Sadler had received from the confidential informant. Defendant claims the traffic stop was a pretense stop and argues that the evidence seized pursuant to the traffic stop should have been suppressed because Officer Baker had no reason to search the vehicle. Further, Defendant argues that Officer Baker searched the vehicle without permission from Defendant, and that his alleged statement that there was more marijuana in the back of the vehicle did not constitute consent to search the vehicle. For these reasons, Defendant claims the trial judge erred in denying the motion to suppress the evidence seized in the traffic stop. Again, we are not persuaded by Defendant’s arguments.
 

 If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial.
 
 Mapp v. Ohio,
 
 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72 (1961). Warrantless searches and 12nseizures are
 
 per se
 
 unreasonable unless justified by one of the exceptions to the warrant requirement. Generally, the decision to stop a vehicle is reasonable when the police have probable cause to believe a traffic violation has occurred; the standard is purely objective and does not take into consideration the subjective beliefs or expectations of the detaining officer.
 
 State v. Mitchell,
 
 10-334 (La.App. 5th Cir.10/26/10), 52 So.3d 155.
 

 The automobile exception to the warrant requirement does not have an independent exigency requirement; and, if probable cause exists for the search of the vehicle, that is sufficient.
 
 Mitchell, supra.
 
 The exigency is supplied by the inherent mobility of the vehicle and the citizen’s lesser expectation of privacy.
 
 Id.
 
 Given probable cause to search, either seizing and holding a car before presenting the probable cause issue to a magistrate or immediately searching the vehicle without a warrant, are reasonable under the Fourth Amendment and the Louisiana State Constitution.
 
 Id.
 
 Probable cause means a fair probability that contraband will be found.
 
 Id.
 
 Whether probable cause exists for a search must be judged by the probabilities and practical considerations of everyday life on which average people, particularly average police officers, can be expected to act.
 
 Id.
 

 Here, the search of Defendant’s vehicle clearly occurred after he was stopped for a traffic violation witnessed by Officer Baker. Both Officer Baker and Corporal Sad-ler testified that Officer Baker called Cor
 
 *461
 
 poral Sadler and reported that Defendant had just committed a traffic violation and asked if he should make the traffic stop. Since Corporal Sadler had 12ibeen investigating Defendant for weeks, he told Officer Baker, who was on the investigating team, to make the traffic stop.
 

 Officer Baker stopped Defendant for crossing the center line and, in fact, signed an affidavit of probable cause for arrest without a warrant stating that Defendant had been arrested for “Left of Center” and possession of a controlled dangerous substance with intent to distribute. We find no pretextual basis for the traffic stop by Officer Baker.
 
 [4]
 

 We now turn to the events following the valid stop. Officer Baker testified that Defendant was acting in a very peculiar way and that he appeared nervous. When he was asked to retrieve his registration, Defendant circled his vehicle three times before deciding to open the passenger door to reach the glove box. Officer Baker was shining his flashlight into the car to make sure Defendant was not going to retrieve a weapon, and he happened to look down and see, in plain view, a plastic baggie of marijuana on the door handle of the driver’s side door. The presence of the marijuana in plain view gave Officer Baker probable cause to conduct a war-rantless search of Defendant’s vehicle. Officer Baker then placed Defendant under arrest and had Officer Waggoner read him his
 
 Miranda
 
 rights. Thereafter, Officer Baker asked Defendant if there was any more marijuana in the vehicle, and Defendant told him there was some in the back seat. At that point, Defendant no longer had an expectation of privacy in the back of his car, and the discovery of the marijuana in the camouflage backpack and its subsequent seizure were reasonable.
 

 |22For the foregoing reasons, we find these assignments of error to be without merit.
 

 Assignment of Error Number Five (verbatim):
 
 The trial court committed error in failing to suppress evidence seized in a residence not owned or leased to defendant.
 

 Assignment of Error Number Six (verbatim):
 
 The trial court committed error in failing to suppress evidence seized from an abandoned vehicle not belonging to defendant.
 

 Defendant also argues that the trial judge erred in refusing to suppress evidence seized in the residence at 3620 Curry Street and from the Honda vehicle located in the driveway of that residence because he was not in possession of the premises and had not lived there for more than two years.
 
 [5]
 
 He argues that, although both Officer Baker and Corporal Sadler testified that mail addressed to Defendant was located in the residence, that evidence was not introduced or shown to the judge. Further, both officers stated that they gained access to the residence with keys from a key ring acquired during the search of Defendant incident to his arrest and prior to the issuance of the search warrant. Defendant complains that the keys to the residence were not introduced into evidence and the officers could not remember how the keys got from Officer Baker to Corporal Sadler.
 

 
 *462
 
 Defendant further asserts that, although Corporal Sadler testified that he had been conducting an investigation of him and testified that he had recently seen him leaving the premises, Corporal Sadler listed the wrong address on the warrant. For these reasons, Defendant claims the officers | ^entered the residence and the vehicle in the driveway without a valid search warrant; and, therefore, all of the evidence seized therein should have been suppressed. We disagree.
 

 La. C. Cr. P. art. 162 provides that a search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant. Section C of the article provides that a search warrant shall particularly describe the person or place to be searched, the persons or things to be seized and the lawful purpose or reason for the search or seizure.
 

 We conclude that Corporal Sadler obtained a valid warrant to search the residence at 3620 Curry Street and its curti-lage where the Honda vehicle was located. Despite Defendant’s protestations to the contrary, ample evidence proving he was in possession of the home was provided at the hearing on the motion to suppress. Corporal Sadler personally observed Defendant leaving the residence on the day of his arrest, carrying the camouflage backpack, on his way to his meeting with the confidential informant at the Powell Street recreation center. Corporal Sadler had probable cause to seek the issuance of the search warrant on that particular address. Further, although Defendant denied ownership of the Honda in which more than four pounds of marijuana were found, as well as the .22 caliber Smith and Wesson pistol, a search of the vehicle yielded a registration document indicating that Defendant was the owner of the vehicle. Moreover, one of the cameras outside the residence was trained onj^the Honda and it formed part of the live feed to the monitor located inside the residence. We conclude that the trial judge properly denied the motion to suppress the evidence found in the residence and in the vehicle located at 3620 Curry Street.
 

 Error Patent Review
 

 Our review of this record for errors patent revealed that the trial judge failed to impose a sentence without benefit of probation, parole or suspension of sentence for two of the crimes and failed to impose certain mandatory fines.
 

 Sentences without benefits:
 

 When a district court fails to order statutorily mandated service of sentence without benefits, the sentence will automatically be served without benefits for the required time period. See
 
 State v. Williams,
 
 00-1725 (La.11/28/01), 800 So.2d 790. The reviewing court may order that the sentence be served at hard labor without benefit of probation, parole or suspension of sentence. La. R.S. 15:301.1.
 

 In this case, the 12-year sentence for possession of a firearm by a convicted felon and the 5-year sentence for possession of benzylpiperazine must be served, without benefits; however, the trial judge failed to so specify. At the guilty plea hearing, Defendant was informed that whatever sentence would eventually be imposed for the possession of the firearm would have to be served without benefits. He chose to plead guilty with full knowledge of this fact. The 12-year sentence for possession of a firearm by a convicted felon is, therefore, amended to reflect that the sentence imposed [ 2Bis to be without benefits. In addition, the 5-year sentence for possession of benzylpiperazine is also amended to reflect that it is be served without benefit of probation, parole or suspension of sentence. Since this sentence is
 
 *463
 
 to run concurrently with the 12-year term for possession of a firearm by a convicted felon, the 5-year term without benefits will be served at the same time as the 12-year sentence.
 

 Failure to impose mandatory fines:
 

 The trial judge failed to impose certain mandatory fines; however, when a trial court does not impose a fine in a situation where the statute authorizes a fine of “not more than” an amount, it impliedly imposes a fine of $0 and is not an error patent.
 
 State v. Francois,
 
 06-788 (La.App. 3d Cir.12/13/06), 945 So.2d 865. In addition, since the State did not object to the failure to impose fines at sentencing, or on appeal, we will refrain from amending Defendant’s sentence or remanding for resentencing.
 
 See State v. Wright,
 
 43,633 (La.App.2d Cir.10/22/08), 997 So.2d 133.
 

 DECREE
 

 For the foregoing reasons, the convictions of Defendant are affirmed. The 12-year sentence for possession of a firearm by a convicted felon and the 5-year sentence for possession of benzylpiperazine are amended to reflect that they must be served without benefit of probation, parole or suspension of sentence. In all other respects, the sentences of Defendant are affirmed.
 

 CONVICTIONS AFFIRMED; SENTENCES AMENDED AND, AS AMENDED, AFFIRMED.
 

 APPLICATION FOR REHEARING
 

 Before WILLIAMS, STEWART, MOORE, LOLLEY
 
 &
 
 SEXTON, JJ.
 

 Rehearing denied.
 

 [1]
 

 . There is some confusion with regard to who actually took these pictures and with which camera they were taken. From testimony given at the hearing on the motion to suppress, Corporal Sadler used his own camera to take pictures of the evidence, and it is the camera with the date posting problem.
 

 [2]
 

 . Defense counsel agreed to set aside some
 
 pro se
 
 motions to suppress filed by Defendant and to argue only the motion that defense counsel had filed.
 

 [3]
 

 . The warrant actually states as follows:
 

 Considering the affidavit in support hereof, ... the Court finding hereby the affiant Cpl. Sadler ... that the facts recited in the affidavit establish to the Court’s satisfaction that there is probable cause to make the search of the residence located at 3620 Curry St. Monroe, La 71202.
 

 You are hereby authorized to seize and search forthwith the following described: The resident and cartilage [sic] located at 503 South 24th St. Monroe, La. The residence is described as a white in color wood framed house with white trim. The residence is the seventh house on the south side of the roadway as one east on Curry St. from Cairo St. There is a white wooden sign on the front porch leading up to the front door. The sign reads in
 
 [sic
 
 ] 3620 Curry in black writing.
 

 [4]
 

 . Even if pretextual, a traffic stop is valid if the officer actually observes a traffic violation.
 
 See Whren v. U.S.,
 
 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
 

 [5]
 

 . No argument is made explaining why Defendant should not be deemed to be the owner of the Honda vehicle. Again, the registration found in the glove compartment listed him as being the owner of the vehicle.