2010 ND 143

**Maureen Ann WOODWARD, Plaintiff and Appellant**

**v.**

**George WOODWARD, Defendant and Appellee.**

No. 20090316.

Supreme Court of North Dakota.

July 15, 2010.

William Kirschner, Fargo, N.D., for plaintiff and appellant.

Jerilynn Brantner Adams, Fargo, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Maureen Ann Woodward appealed from a third amended divorce judgment changing primary residential responsibility of her minor child from her to her former husband, George Woodward, and establishing a parenting schedule for the child. We hold the district court did not err in denying Maureen Ann Woodward's motion for recusal of the district court judge and the court's modifications of primary residential responsibility and parenting time are not clearly erroneous. We affirm.

I

[¶ 2] In *Woodward v. Woodward*, 2009 ND 214, ¶¶ 2–4, 776 N.W.2d 567, we outlined the circumstances leading up to a prior appeal in this post-judgment divorce proceeding:

> George and Maureen Ann Woodward were married in 1986 and have three children from their marriage. The parties divorced in 2006. Maureen Ann Woodward was awarded physical custody of the children, and George Woodward was awarded reasonable visitation. George Woodward remarried in 2007 and currently works as a physician in Grand Forks. Maureen Ann Woodward continues to reside in Fargo with the children, serves as their home school teacher and has not remarried.
>
> In 2008, Maureen Ann Woodward discontinued visitation, claiming the children were afraid of George Woodward's new wife, and moved to amend the divorce judgment so that George Woodward could exercise limited visitation with the children only when his new wife

was not present. The judicial referee denied Maureen Ann Woodward's motion, granted George Woodward's responsive motion to hold her in contempt for withholding visitation, granted George Woodward compensatory visitation and ordered her to undergo a parental alienation and psychological evaluation. The referee also ordered her to pay George Woodward's attorney fees. Upon request for review, the district court adopted the judicial referee's findings and order.

> After Maureen Ann Woodward continued to deny George Woodward visitation with the children, he again moved to hold her in contempt, and she responded with a motion to suspend visitation. The district court found her in contempt and ordered that the two remaining minor children attend counseling as needed to "transition" them for visitation. The court ordered that Maureen Ann Woodward could purge herself of contempt by complying with the visitation provisions of the amended divorce judgment.

[¶ 3] In *Woodward*, 2009 ND 214, ¶ 1, 776 N.W.2d 567, we affirmed the district court orders denying Maureen Ann Woodward's motion to modify or limit George Woodward's visitation with the parties' three children, granting George Woodward's motion for compensatory visitation, finding Maureen Ann Woodward in contempt for failure to comply with the visitation provisions of the divorce judgment, and ordering Maureen Ann Woodward to undergo a parental alienation and psychological evaluation.

[¶ 4] In March 2009 and while the prior appeal was pending before this Court, George Woodward moved to change custody of the three children. In April 2009, Maureen Ann Woodward asked the district

court judge to recuse himself from further proceedings in this case, claiming the judge's refusal to completely read and review the deposition testimony of Dr. Harjinder Virdee, a board certified psychiatrist, at a February 2009 hearing before ruling on George Woodward's prior contempt motion violated the court's judicial duties and demonstrated a lack of impartiality. The court denied Maureen Ann Woodward's motion for recusal, stating that at the February 2009 hearing:

> The Court was willing to consider any part of Dr. Virdee's deposition Plaintiff could direct the Court as important. . . .

> The Court allowed Plaintiff's Counsel to identify the most pertinent sections of the deposition. Plaintiff's Counsel pointed out that in her deposition, Dr. Virdee speaks strongly about how the children are suffering emotionally and psychologically and that they would be in danger if they were forced to visit their stepmother. . . . Further, Plaintiff's Counsel mentions that they (Counsel and Dr. Virdee) had a rather lengthy conversation that goes on about forty-five pages, but that Dr. Virdee basically makes numerous references to how the children are being affected by the threat or the fear that they have of visiting with their stepmother. . . . . The Court considered the testimony and disposed of the matter fairly and with impartiality. Plaintiff directed the court to no other parts of the deposition, nor does the Plaintiff do so now. Judges are not ferrets. *Linrud v. Linrud*, 552 N.W.2d 342, 345 (N.D.1996).

> In this case, Plaintiff has previously filed numerous Motions and committed other acts to delay and frustrate visitation between the parties' children and Defendant. Plaintiff has twice been held in contempt concerning visitation. There appears to be no legitimate basis for filing this Motion to Recuse Court. Rather, it appears that Plaintiff filed her Motion to Recuse Court for the sole purpose of further delaying the proceedings in this matter. The Court concludes that a reasonable person could not, on the basis of these objective facts, reasonably question the Court's impartiality, and that disqualification is not required.

[¶ 5] After an evidentiary hearing, the district court partially granted George Woodward's motion for change of custody and changed custody of only the youngest child. The court found there had been a significant change in circumstances since the original custody decision, including that Maureen Ann Woodward had persistently and without justification denied George Woodward visitation with the children, the children were significantly behind in their schooling, the children had been isolated in Maureen Ann Woodward's home, and George Woodward had remarried and has a stable home in Grand Forks. The court also found it would be in the children's best interests if George Woodward had primary custody because he is better able to satisfy the children's educational needs, he is more aware of the children's social and emotional needs and the importance of developing outside interests, he provides opportunities for the children to interact with their relatives, Maureen Ann Woodward has centered on her continuing conflict with George Woodward and exposed the children to that conflict and alienation, and she has issues which adversely affect the children's relationship with their father. The court decided, however, it lacked authority to change custody of the eighteen-year old child because that child was no longer a minor and a change

of custody was not in the best interest of the sixteen-year old child because that child was nearing majority and did not wish to reside with or visit George Woodward. The court decided, however, it was in the best interest of the nine-year old child to change custody to George Woodward. The court also established a visitation schedule, granting Maureen Ann Woodward the same visitation with the youngest child that George Woodward had received with the other children under the existing judgment.

## II

[¶ 6] Maureen Ann Woodward argues the district court judge erred in failing to recuse himself from further proceedings in this case, including George Woodward's motion for change of custody. She argues the district court judge's failure to read Dr. Virdee's complete deposition before ruling on George Woodward's prior contempt motion violated the court's judicial duties and demonstrated a lack of impartiality. George Woodward responds that Maureen Ann Woodward's appeal from the order denying recusal is not timely.

[¶ 7] We reject George Woodward's claim that Maureen Ann Woodward's appeal from the court's order denying her motion to recuse is untimely. It is well settled that nonappealable interlocutory orders are reviewable in an appeal from a final judgment. *E.g., Security State Bank v. Orvik*, 2001 ND 197, ¶ 6, 636 N.W.2d 664. The district court's order denying Maureen Ann Woodward's motion for recusal is a nonappealable interlocutory order that is reviewable on appeal from the final judgment. *See* N.D.C.C. § 28–27–02 (outlining appealable orders). We therefore review Maureen Ann Woodward's argument in the context of her timely appeal from the third amended judgment.

[¶ 8] A judge shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. N.D.Code Jud. Conduct, Canon 2. Canon 3(E)(1)(a), N.D.Code Jud. Conduct, governs disqualification of a judge for bias or prejudice whenever the judge's impartiality might reasonably be questioned and provides:

E. Disqualification.

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceedings.

[¶ 9] The rules of judicial conduct provide that a judge is required to avoid impropriety and the appearance of impropriety in all the judge's activities. *Farm Credit Bank v. Brakke*, 512 N.W.2d 718, 720 (N.D.1994). " 'The law presumes a judge is unbiased and not prejudiced.' " *Id.* (citation omitted). We have said "[a] ruling adverse to a party in the same or prior proceeding does not render a judge biased so as to require disqualification." *Id.* The test for the appearance of impartiality is one of reasonableness and recusal is not required in response to spurious or vague charges of impartiality. *Id.* at 721. In *State v. Jacobson*, 2008 ND 73, ¶ 13, 747 N.W.2d 481, we explained:

Although a judge has a duty to recuse when required by the Code, a judge also has an "equally strong duty not to recuse when the circumstances do not

require recusal." *See* Center for Professional Responsibility, American Bar Association, Annotated Model Code of Judicial Conduct 187 (2004); *cf. Brakke,* 512 N.W.2d 718 (holding a judge should not disqualify when a party brings a frivolous lawsuit against the judge for the purpose of disqualifying him from the proceeding). Canon 3(B)(1), N.D.Code Jud. Conduct, imposes on a judge the duty to "hear and decide matters assigned to the judge except those in which disqualification is required." Canon 3(B)(1) was added to the Code "to emphasize the judicial duty to sit and to minimize potential abuse of the disqualification process." Center for Professional Responsibility, *supra,* at 188 (quoting ABA Standing Committee on 1990 Code, Legislative Draft 15 (1990)).

■ [¶ 10] The transcript of the February 2009 hearing reflects Maureen Ann Woodward was allowed to summarize portions of Dr. Virdee's deposition transcript in the face of objections by George Woodward that Dr. Virdee was not present to testify and there was no showing Dr. Virdee was deceased, she was more than 100 miles from the place of trial or out of state, she was unable to testify because of age, illness, infirmity, or imprisonment, there were exceptional circumstances to allow use of the deposition, or that Maureen Ann Woodward had been unable to procure Dr. Virdee's attendance by subpoena. *See* N.D.R.Civ.P. 32(a)(3). The district court allowed Maureen Ann Woodward to refer to what she believed was the most important parts of Dr. Virdee's deposition. The record reflects the district court judge stated he would consider any part of Dr. Virdee's deposition that Maureen Ann Woodward believed was important and that Maureen Ann Woodward was permit-

ted to summarize the deposition transcript. We conclude this record does not objectively establish that the district court judge's impartiality might reasonably be questioned, and we hold the district court did not err in denying Maureen Ann Woodward's motion to recuse itself from further proceedings in this case.

### III

[¶ 11] Maureen Ann Woodward argues the district court clearly erred in changing custody, now denominated as primary residential responsibility under 2009 N.D. Sess. Laws ch. 149, § 4, for the youngest child to George Woodward.

■■ [¶ 12] A district court's decision whether to change primary residential responsibility for a child is a finding of fact subject to the clearly erroneous standard of review. *See Stanhope v. Phillips–Stanhope,* 2008 ND 61, ¶ 7, 747 N.W.2d 79. "A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made." *Id.*

[¶ 13] Section 14–09–06.6, N.D.C.C., outlines limitations on post-judgment modifications of primary residential responsibility and provides:

1. Unless agreed to in writing by the parties, or if included in the parenting plan, no motion for an order to modify primary residential responsibility may be made earlier than two years after the date of entry of an order establishing primary residential responsibility, except in accordance with subsection 3.

. . . .

3. The time limitation in subsections 1 and 2 does not apply if the court finds:

   a. The persistent and willful denial or interference with parenting time;

   . . . .

4. A party seeking modification of an order concerning primary residential responsibility shall serve and file moving papers and supporting affidavits and shall give notice to the other party to the proceeding who may serve and file a response and opposing affidavits. The court shall consider the motion on briefs and without oral argument or evidentiary hearing and shall deny the motion unless the court finds the moving party has established a prima facie case justifying a modification. The court shall set a date for an evidentiary hearing only if a prima facie case is established.

5. The court may not modify the primary residential responsibility within the two-year period following the date of entry of an order establishing primary residential responsibility unless the court finds the modification is necessary to serve the best interest of the child and:

   a. The persistent and willful denial or interference with parenting time;

   . . . .

6. The court may modify the primary residential responsibility after the two-year period following the date of entry of an order establishing primary residential responsibility if the court finds:

   a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

   b. The modification is necessary to serve the best interest of the child.

[¶ 14] There is evidence in this record to support the district court's findings that Maureen Ann Woodward had persistently and without justification denied George Woodward visitation, now denominated as a parenting schedule or parenting time under 2009 N.D. Sess. Laws ch. 149, § 4. Under N.D.C.C. § 14–09–06.6, persistent and wilful denial of parenting time supports a modification of primary residential responsibility if modification is in the best interests of the children. Here, the court also found that modification of primary residential responsibility was in the best interests of the children. The court split custody of the youngest and the second youngest child, stating the second youngest child, who was sixteen years old, did not want to see or visit her father and the consensus of the medical professionals was to not force that child to go to George Woodward's home. Merely because the second youngest child does not want to see her father, however, does not control primary residential responsibility for the youngest child. There is evidence in this record to support the district court's findings, and we decline Maureen Ann Woodward's invitation to reweigh the evidence. We are not left with a definite and firm conviction the court made a mistake in changing primary residential responsibility for the youngest child. We have reviewed the district court's findings on the best interests of the children, and we conclude there is evidence to support

# 909

the court's findings. The court's explanation for changing custody of only the youngest child provides a reasoned analysis of the factual circumstances facing the court, and we conclude the court's decision to modify primary residential responsibility for the youngest child is not clearly erroneous.

## IV

[¶ 15]   Maureen Ann Woodward argues the district court clearly erred in establishing a visitation schedule, now designated as a parenting schedule under 2009 N.D. Sess. Laws ch. 149, § 4.

[¶ 16]   A district court's decision on a parenting schedule for parenting time is a finding of fact reviewed under the clearly erroneous standard of review. *See Wolt v. Wolt,* 2010 ND 26, ¶ 38, 778 N.W.2d 786.   In establishing parenting time for the noncustodial parent, the best interest of the child, rather than the wishes or desires of the parents are paramount. *Id.*

[¶ 17]   The district court essentially awarded Maureen Ann Woodward parenting time that George Woodward had been awarded before the change in primary residential responsibility for the youngest child.   Maureen Ann Woodward does not argue the parenting time that had been awarded to George Woodward was inadequate to foster a parent-child relationship that would be beneficial to the child.   N.D.C.C. § 14–05–22.   Thus, there is evidence in this record to support the district court's decision.   We have reviewed the record, and we are not left with a definite and firm conviction the court made a mistake in establishing a parenting schedule.   We conclude the court did not clearly err in establishing parenting time for Maureen Ann Woodward.

## V

[¶ 18]   We affirm the third amended judgment.

[¶ 19] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, JJ., ALLAN L. SCHMALENBERGER, S.J., concur.

[¶ 20] The Honorable ALLAN L. SCHMALENBERGER, S.J., sitting in place of KAPSNER, J., disqualified.