2013 ND 106

**Jorey KARTES, Plaintiff and Appellee**

v.

**Erin KARTES, n/k/a Erin Muxlow, Defendant and Appellant.**

**No. 20120311.**

Supreme Court of North Dakota.

June 19, 2013.

Carrie L. Francis, Minot, N.D., for plaintiff and appellee.

Jaclyn M. Stebbins, Bismarck, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Erin Muxlow, formerly known as Erin Kartes, appealed from an amended divorce judgment awarding Jorey Kartes primary residential responsibility for the parties' two children. We affirm, concluding on appeal a party cannot challenge a district court's conclusion that a prima facie case has been established warranting an evidentiary hearing on a change of primary residential responsibility and the district court's findings that Muxlow's actions constituted a persistent and willful denial

or interference with Kartes's parenting time and that the best interests of the children required a change of primary residential responsibility to Kartes were not clearly erroneous.

I

[¶ 2] Kartes and Muxlow married in 2002 and had two children. When they divorced in 2010, Kartes and Muxlow stipulated to a parenting plan for the children. Under the terms of the original parenting plan, which was incorporated into the divorce judgment, Muxlow received primary residential responsibility for the children and Kartes received 14 days of parenting time each month, to be exercised as two seven-consecutive-day parenting times per month. At the time of the divorce, both parties lived in Minot.

[¶ 3] In February 2011, less than six months after entry of the divorce judgment, Muxlow moved to amend the judgment to allow her to move to Texas with the children. Kartes objected and moved to amend the judgment to change primary residential responsibility to himself. The court denied both motions, and the parties continued with the original parenting plan, essentially alternating custody of the children on a weekly basis.

[¶ 4] In September 2011 Kartes learned that the man Muxlow was engaged to marry, Jeremy Muxlow, was a registered sex offender. Erin and Jeremy Muxlow married a few days later and moved to Tappen, North Dakota, approximately 2½ hours from Kartes's home.

[¶ 5] Kartes immediately moved to modify the residential responsibility provisions of the divorce judgment, seeking primary residential responsibility for the children. The district court concluded Kartes had established a prima facie case for modification of primary residential responsibility, warranting an evidentiary hearing un-

der N.D.C.C. § 14–09–06.6(4). Following a two-day evidentiary hearing in March 2012, the district court found Muxlow's change of residence constituted a persistent and willful denial or interference with Kartes's parenting time and a change of primary residential responsibility was necessary to serve the best interests of the children. An amended judgment granting primary residential responsibility to Kartes was entered in July 2012, and Muxlow appealed.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Muxlow's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 7] Muxlow contends the district court erred in concluding Kartes had established a prima facie case warranting an evidentiary hearing on his motion to modify primary residential responsibility.

[¶ 8] Because Kartes's motion to modify primary residential responsibility was made within two years of entry of the divorce judgment granting Muxlow primary residential responsibility, the motion was governed by N.D.C.C. § 14–09–06.6(5):

The court may not modify the primary residential responsibility within the two-year period following the date of entry of an order establishing primary residential responsibility unless the court finds the modification is necessary to serve the best interest of the child and:

a. The persistent and willful denial or interference with parenting time;

b. The child's present environment may endanger the child's physical or

emotional health or impair the child's emotional development; or

c. The residential responsibility for the child has changed to the other parent for longer than six months.

To warrant an evidentiary hearing on the motion, the party seeking modification must first establish a prima facie case justifying a modification:

A party seeking modification of an order concerning primary residential responsibility shall serve and file moving papers and supporting affidavits and shall give notice to the other party to the proceeding who may serve and file a response and opposing affidavits. The court shall consider the motion on briefs and without oral argument or evidentiary hearing and shall deny the motion unless the court finds the moving party has established a prima facie case justifying a modification. The court shall set a date for an evidentiary hearing only if a prima facie case is established.

N.D.C.C. § 14–09–06.6(4).

[¶ 9] A prima facie case requires only enough evidence to allow the factfinder to infer the fact at issue and rule in the moving party's favor. *Sweeney v. Kirby*, 2013 ND 9, ¶ 5, 826 N.W.2d 330. It is a "bare minimum" and requires only facts which, if proved at an evidentiary hearing, would support a change of primary residential responsibility that could be affirmed if appealed. *Id.; Ehli v. Joyce*, 2010 ND 199, ¶ 7, 789 N.W.2d 560. In determining whether a prima facie case has been established, the district court must accept the truth of the moving party's allegations and may not weigh conflicting allegations. *Schumacker v. Schumacker*, 2011 ND 75, ¶ 8, 796 N.W.2d 636; *Volz v. Peterson*, 2003 ND 139, ¶ 14, 667 N.W.2d 637. The opposing party may present evidence challenging the moving party's right to the relief requested, but

when that evidence merely creates conflicting issues of fact, the court may not weigh or resolve conflicting allegations. *Schumacker*, at ¶ 8. Unless the opposing party's counter-affidavits conclusively show the moving party's allegations have no credibility or are insufficient to justify modification of primary residential responsibility, an evidentiary hearing must be held to resolve conflicting evidence and determine whether a modification of primary residential responsibility is warranted. *Id.; Volz*, at ¶ 14.

[¶ 10] The district court in this case concluded Kartes had established a prima facie case to justify modification based upon allegations that Muxlow had married a registered sex offender and moved more than two hours away from Minot, that Muxlow was facing pending criminal charges and her driver's license had been suspended, and that Muxlow had moved several times and changed jobs numerous times since the divorce. Muxlow argues Kartes did not allege sufficient facts to establish a prima facie case and the district court's conclusion that Kartes had established a prima facie case was induced by an erroneous view of the law. She contends the court therefore erred when it allowed the case to proceed to an evidentiary hearing.

[¶ 11] It is unnecessary to decide whether the district court erred when it concluded Kartes had established a prima facie case, because that issue became moot when the evidentiary hearing was held and the court resolved the issues on the merits.

[¶ 12] The purpose of the prima facie case requirement is to avoid holding modification hearings based on mere allegations alone, and it is not intended to allow the moving party an opportunity to investigate unsubstantiated allegations. *Kourajian v. Kourajian*, 2008 ND 8, ¶ 12,

744 N.W.2d 274; *see also Schumacker,* 2011 ND 75, ¶ 7, 796 N.W.2d 636. The procedure created by N.D.C.C. § 14–09–06.6(4) therefore allows the district court to eliminate unsupported or frivolous cases without imposing upon the court and the parties the burden and expense of an unnecessary evidentiary hearing. The requirement of establishing a prima facie case at a preliminary stage creates a threshold burden upon the party seeking modification, requiring a showing that there is evidence upon which a court could rule in his favor. *See Sweeney,* 2013 ND 9, ¶¶ 5–6, 826 N.W.2d 330. The conclusion that a prima facie case has been established is not a final determination of any issue in the case, but merely allows the case to proceed to a full presentation of the evidence at a hearing with a full and final determination of the issues on the merits.

[¶ 13] In this respect, the prima facie case requirement in N.D.C.C. § 14–09–06.6(4) is similar to two other procedures which create a threshold requiring a preliminary showing that there is evidence upon which a court could rule in the party's favor as a prerequisite to a full evidentiary hearing or trial: (1) a motion for summary judgment dismissal in a civil case, and (2) a preliminary hearing in a criminal case. In both of those circumstances, it is generally held that the question of the adequacy of the preliminary showing is rendered moot when the case proceeds to trial and is resolved upon the merits. Thus this Court has consistently held that if a case goes to trial after a motion for summary judgment is denied, the question of whether the trial court erred in denying summary judgment is moot. *In re Estate of Vestre,* 2011 ND 144, ¶ 19, 799 N.W.2d 379; *Olander Contracting Co. v. Gail Wachter Invs.,* 2002 ND 65, ¶ 9, 643 N.W.2d 29; *Berg v. Dakota Boys Ranch Ass'n,* 2001 ND 122, ¶¶ 10–

11, 629 N.W.2d 563. As this Court noted in *Berg,* at ¶ 10: "Once a case proceeds to trial, the question of whether a party has met its burden as to the elements of a claim must be answered with reference to the evidence and the record as a whole, rather than by looking to the pretrial submissions alone."

[¶ 14] Similarly, although this Court has apparently never directly addressed the issue, courts in other jurisdictions have held that any question whether probable cause was established at the preliminary hearing is rendered moot if the defendant is convicted after a trial. *See, e.g., People v. Crittenden,* 9 Cal.4th 83, 36 Cal.Rptr.2d 474, 885 P.2d 887, 917 (1994); *Wood v. People,* 255 P.3d 1136, 1141 (Colo.2011); *In re Doe,* 102 Hawai'i 75, 73 P.3d 29, 32 (2003); *State v. Lee,* 266 Kan. 804, 977 P.2d 263, 265–66 (1999); *State v. Turner,* 82 So.3d 449, 458 (La.Ct.App.2011); *State v. West,* 223 Neb. 241, 388 N.W.2d 823, 829 (1986); *Commonwealth v. Walter,* 600 Pa. 392, 966 A.2d 560, 565 (2009); *State v. Webb,* 160 Wis.2d 622, 467 N.W.2d 108, 110–11 (1991).

[¶ 15] In *People v. Wood,* 230 P.3d 1223, 1225–26 (Colo.App.2009), *aff'd,* 255 P.3d 1136 (Colo.2011), the court aptly summarized the view that preliminary rulings on threshold issues such as summary judgment and probable cause become moot once the issues have been resolved after a full evidentiary hearing or trial:

These procedures are all designed to shield parties from the rigors of trial when the evidence shows the presence or absence of certain circumstances.... *Holmes v. Dist. Court,* 668 P.2d 11, 15 (Colo.1983) ("The preliminary hearing is designed to weed out groundless or unsupported charges and to relieve the accused of the degradation and expense of a criminal trial."); *Ginter v. Palmer*

*& Co.,* 196 Colo. 203, 205, 585 P.2d 583, 584 (1978) (purpose of summary judgment is "to pierce the formal allegations of the pleadings and save the time and expense connected with a trial when, as a matter of law, based on undisputed facts, one party could not prevail").

Appellate courts do not review orders denying dismissal at preliminary hearing. *See People v. Horrocks,* 190 Colo. 501, 504, 549 P.2d 400, 402 (1976). Nor do they review orders denying summary judgment. *See Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244, 1250 (Colo.1996). These types of orders are not final when pronounced, and they become moot once the issues have been resolved by the fact finder. *See Feiger, Collison & Killmer,* 926 P.2d at 1249 ("[O]nce trial begins, summary judgment motions effectively become moot.") (quoting *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 397 (5th Cir.1995)); *People v. Martin,* 670 P.2d 22, 24 (Colo.App. 1983) ("[O]nce the defendant has been found guilty beyond a reasonable doubt, the issue of whether there was probable cause to bind him over after a preliminary hearing becomes moot.").

[¶ 16] The same rationale applies to the prima facie case requirement under N.D.C.C. § 14–09–06.6(4). As in the summary judgment or preliminary hearing settings, one party is required, as a prerequisite to receiving an evidentiary hearing or trial, to present sufficient evidence of facts which, if established at the hearing or trial, would allow the trial court to decide in their favor on the merits. The preliminary determination by the trial court that the threshold requirement has been met does not finally resolve any of the issues on the merits but merely puts the parties to their proof with a full opportunity to present all of their evidence. There can be little, if any, prejudice to the opposing party when the only effect of the district court's order

finding a prima facie case is to grant a hearing and require the parties to present their case. Under these circumstances, the question whether a sufficient preliminary showing was made is immaterial and becomes moot once the case has proceeded to a full evidentiary hearing or trial, and "the question of whether a party has met its burden as to the elements of a claim must be answered with reference to the evidence and the record as a whole." *Berg,* 2001 ND 122, ¶ 10, 629 N.W.2d 563.

[¶ 17] We further note that a procedure which would allow a party appealing from the final order or judgment to seek reversal based upon an alleged lack of evidence to support a prima facie case at the preliminary stages of the case may lead to absurd and undesirable results. For example, an appellate court would be placed in an untenable position if it was ultimately found that the evidence presented by the moving party had been insufficient to warrant a hearing, but undisputable evidence presented at the hearing conclusively established that the custodial parent had repeatedly abused the child. In such a case, it would hardly serve the interests of justice or fairness to reverse a district court order modifying primary residential responsibility and removing the children from the abusive parent's home. Appellate courts should not be forced to ignore the true factual situation and attempt to "unring the bell" if the evidence presented at the evidentiary hearing establishes a clear basis necessitating modification of primary residential responsibility.

■ [¶ 18] We conclude that any issue regarding the evidentiary basis for a court's decision that a prima facie case has been established under N.D.C.C. § 14–09–06.6(4) is rendered moot once the evidentiary hearing is held. Thus the opposing

party may not, on appeal from the final order or judgment, challenge the district court's conclusion that the moving party established a prima facie case justifying a modification of primary residential responsibility. Therefore, we need not address Muxlow's argument alleging Kartes failed to establish a prima facie case.

### III

[¶ 19] A court may not modify primary residential responsibility within two years of entry of the order or judgment establishing primary residential responsibility unless the court finds (1) modification is necessary to serve the best interests of the child and (2) one of the following three factors is present:

a. The persistent and willful denial or interference with parenting time;

b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or

c. The residential responsibility for the child has changed to the other parent for longer than six months.

N.D.C.C. § 14–09–06.6(5). Muxlow argues the district court erred as a matter of law when it relied upon subsection (b), child endangerment, to decide that a prima facie case had been established, but relied upon subsection (a), interference with parenting time, to support its ultimate decision to modify primary residential responsibility.

[¶ 20] As directed in N.D.C.C. § 14–09–06.6(4), the district court was initially required to determine whether Kartes had established a prima facie case justifying modification based solely upon the moving papers, supporting affidavits, and briefs. In its order concluding that a prima facie case had been established, the court stated:

In considering the three factors under N.D.C.C. 14–09–06.6, and recognizing that there has been denial of parenting time by both parties in this matter to some extent, the Court does not find . . . a persistent or willful interference of the parenting time by either party."

The court concluded, however, that other evidence established a prima facie case under subsection (b), child endangerment, and ordered that an evidentiary hearing be held on Kartes's motion to modify primary residential responsibility. After a two-day evidentiary hearing, with testimony from numerous witnesses and further arguments by the parties, the court found Muxlow's change of residence resulted in a persistent and willful denial or interference with Kartes's parenting time.

[¶ 21] Muxlow now contends that the district court was bound by its original finding there had not been a persistent or willful interference with parenting time and that the court erred as a matter of law when it based its modification of primary residential responsibility upon subsection (a) of N.D.C.C. § 14–09–06.6(5). Muxlow's argument is apparently based upon a misguided notion of res judicata or law of the case, casting as final the district court's preliminary determinations on threshold factual questions, which were based solely on moving papers, affidavits, and briefs. As previously noted, however, the district court's rulings at the prima facie case stage are interlocutory and are not a final resolution on the merits of any of the factual issues in the case. The prima facie case threshold merely determines whether the case will continue forward; final resolution of disputed factual issues must of necessity be made on the basis of the evidence and arguments presented at the hearing. In effect, once the district court decides that a prima facie case has been established, the slate is wiped clean and the parties are put to their proof on all

factual issues raised in the motion to modify primary residential responsibility.

[¶ 22] Muxlow cites no authority for her unique assertion that the district court's ruling on preliminary, threshold issues may not be amended or changed after the evidentiary hearing. However, interlocutory rulings by a trial court are by definition not final, and remain subject to review and modification. *See, e.g., Nesvig v. Nesvig*, 2006 ND 66, ¶ 31, 712 N.W.2d 299 (interlocutory orders are subject to change by the district court during the course of the trial); *Strom–Sell v. Council for Concerned Citizens*, 1999 ND 132, ¶¶ 12–13, 597 N.W.2d 414 (the court retains jurisdiction until final decree to modify or rescind a prior interlocutory order, and the court may correct a prior interlocutory ruling); *Thompson v. Goetz*, 455 N.W.2d 580, 585 (N.D.1990) (interlocutory orders of any kind are ordinarily subject to reconsideration and change).

[¶ 23] We conclude the district court was not bound by its preliminary decision on interference with parenting time and did not err in relying upon N.D.C.C. § 14–09–06.6(5)(a) to modify primary residential responsibility.

## IV

[¶ 24] Muxlow contends the district court's finding her change of residence constituted a persistent and willful denial or interference with Kartes's parenting time was clearly erroneous.

[¶ 25] A district court's decision to modify residential responsibility and its underlying determination there has been a persistent and willful denial or interference with parenting time are findings of fact subject to the clearly erroneous standard of review. *Krueger v. Tran*, 2012 ND 227, ¶ 11, 822 N.W.2d 44; *Woodward v. Woodward*, 2010 ND 143, ¶¶ 12, 14, 785 N.W.2d 902. We summarized our application of the clearly erroneous standard of review in *Hageman v. Hageman*, 2013 ND 29, ¶ 8, 827 N.W.2d 23 (citation omitted):

> A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made. "In applying the clearly erroneous standard, we will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the trial court's decision merely because this Court may have reached a different result." *Hammeren v. Hammeren*, 2012 ND 225, ¶ 8, 823 N.W.2d 482. "A choice between two permissible views of the weight of the evidence is not clearly erroneous." *Id.*

[¶ 26] Muxlow contends the district court held any in-state change of residence by the parent with primary residential responsibility will "automatically constitute a finding of a persistent and willful denial or interference with parenting time." She argues the court's ruling resulted in a "bright line rule" that an in-state move will always, as a matter of law, constitute willful interference with parenting time.

[¶ 27] Muxlow has misread and mischaracterized the district court's ruling. The court did not adopt any form of "bright line rule" or hold that an in-state move by a parent with primary residential responsibility would "automatically" constitute willful interference with parenting time as a matter of law. Rather, the court carefully considered the evidence presented at the evidentiary hearing and issued detailed findings of fact explaining why, under the specific facts in this case, Muxlow's move to Tappen with the children resulted in persistent and willful interference with Kartes's parenting time.

[¶ 28] The court clearly based its decision on the effect of this particular change of residence under the circumstances of this particular case, emphasizing that Muxlow's move would make it impossible to continue the existing agreed-upon parenting plan:

In the present situation it is undisputed that the parties contemplated 168 days per year of parenting time that Jorey would have with the minor children. This was done so on a schedule to which both parties agreed, and was done so on the belief by both parties that such visitation was in the best interest of their children. The situation agreed to by the parties results in Erin having the children a little less than 54 percent of the time while Jorey has the children a little more than 46 percent of the time. Put another way, Jorey is only 14½ days away from a true shared/equal parenting responsibility plan.

It is also undisputed that Erin willfully and voluntarily moved to Tappen, North Dakota, more than two hours away from Minot. This move makes the previously agreed upon parenting time arrangements impossible, especially in light of the fact that the minor children now coming to be school age.... It is also agreed by both parties that the present parenting plan, given the present residence of Erin, is wholly unworkable. The Court concurs.

The district court further found there was no workable alternate schedule that would allow Kartes the same amount of parenting time, noting that even if Kartes were awarded all of summer vacation, every other weekend, all of Christmas vacation, and every Thanksgiving and Easter weekend with the children, his parenting time would still be substantially reduced from that stipulated to by the parties and ordered in the original judgment.

[¶ 29] The court also found Muxlow had changed residences with the children multiple times without consulting or informing Kartes and had attempted to move with the children to Texas. Noting Muxlow's conduct was "egregious," the court found "it is clear to the Court that the intention of Erin with respect to each one of these moves is to interfere with the relationship Jorey has with his children."

[¶ 30] On the basis of the particular facts and circumstances in this case, as identified in the underlying findings of fact, the district court found Muxlow's move to Tappen with the children resulted in a persistent and willful denial or interference with Kartes's parenting time. The court's findings are supported by evidence in the record and are not clearly erroneous. The original judgment awarded Kartes substantial parenting time, resulting in a nearly equal split between the parties. The inescapable practical effect of Muxlow's move with the children to Tappen, 2½ hours away, coupled with the fact the older child was scheduled to start school, was that compliance with the existing parenting plan would be rendered impossible and Kartes would suffer a substantial reduction in parenting time with the children. Muxlow conceded at the evidentiary hearing that if she retained primary residential responsibility after her move to Tappen, Kartes's parenting time would be "drastically affected" and she did not know how he would be able to continue with the same amount of parenting time with the children. When a parent with primary residential responsibility unilaterally decides to move with the children several hours away from the other parent, for the purpose of precluding or substantially impeding compliance with the existing parenting time arrangement, it constitutes a "persistent and willful denial or

interference with parenting time" under N.D.C.C. § 14–09–06.6(5)(a).

[¶ 31] The district court in this case additionally found, with respect to each of her moves, Muxlow intended to interfere with Kartes's relationship with the children. The court's finding was based upon its assessment of Muxlow's lack of credibility regarding the circumstances of and reasons for the moves. We do not on appeal reweigh evidence, reassess witness credibility, retry the case, or substitute our judgment for that of the trial court. *Hageman*, 2013 ND 29, ¶ 8, 827 N.W.2d 23.

[¶ 32] We conclude the district court's finding there was a persistent and willful denial or interference with parenting time was not clearly erroneous.

V

[¶ 33] Muxlow contends several of the district court's findings of fact on the best interest factors are clearly erroneous.

[¶ 34] When considering a motion to modify primary residential responsibility under N.D.C.C. § 14–09–06.6(5)(a), the district court, in addition to finding a persistent and willful denial or interference with parenting time, must also find that "modification is necessary to serve the best interest of the child." To determine whether modification is necessary to serve the best interests of the child, the court must consider the factors set out in N.D.C.C. § 14–09–06.2(1). *E.g., Vining v. Renton*, 2012 ND 86, ¶ 17, 816 N.W.2d 63; *Siewert v. Siewert*, 2008 ND 221, ¶ 19, 758 N.W.2d 691.

[¶ 35] The district court made extensive and detailed findings of fact on each of the best interest factors under N.D.C.C. § 14–09–06.2(1), finding five of the factors favored Kartes and none of them favored

Muxlow. Specifically, the court found factor (b), ability of each parent to provide food, clothing, and shelter, favored Kartes, noting he has a stable employment record while Muxlow has had 14 jobs in eleven years and long periods of unemployment. The court found factor (d), stability of home environment and impact of extended family, favored Kartes, noting he owned his home whereas Muxlow's home in Tappen was provided by Jeremy Muxlow's employer and was dependent on his continued employment. The court also found Kartes lived near numerous aunts, uncles, cousins, and grandparents with whom the children had emotional ties, while Muxlow had no extended family nearby. The court found factor (e), willingness of each parent to foster a relationship with the other parent, favored Kartes, finding Muxlow had moved with the children without consulting or informing Kartes and her moves and attempted move to Texas were intended to interfere with Kartes's relationship with the children. The court found factor (h), home, school, and community records of the children, favored Kartes because Muxlow's lack of residential stability affected the children's ability to develop long-term home, school, and community records. Finally, the court found factor (k), interaction of the children with others in the parent's household, favored Kartes. The court noted that although there was no credible evidence that Jeremy Muxlow was a risk to sexually abuse the children, his failure to acknowledge wrongdoing in the sexual assault to which he had pled guilty, his failure to forthrightly explain an insurance fraud conviction, and his recent arrest for failure to register as a sex offender demonstrated a lack of respect for the legal system, which might be detrimental to the children. After considering and addressing each of the best interest factors, the court found that modification was

necessary to serve the best interests of the children.

[¶ 36] Muxlow raises vague and conclusory allegations challenging the district court's findings on several of the best interest factors. Our review of the district court's findings of fact is guided by the clearly erroneous standard, and a finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, although there is some evidence to support it, on the entire record we are left with a definite and firm conviction a mistake has been made. *Seay v. Seay*, 2012 ND 179, ¶ 6, 820 N.W.2d 705; *Miller v. Mees*, 2011 ND 166, ¶ 12, 802 N.W.2d 153. Furthermore, under the clearly erroneous standard, we do not reweigh the evidence or reassess the credibility of witnesses. *Seay*, at ¶ 6; *Miller*, at ¶ 12. Muxlow's arguments would require us to reweigh the evidence and reassess credibility. We conclude there is ample evidence in the record to support the district court's findings of fact, and the findings are not clearly erroneous.

VI

[¶ 37] We have considered the remaining issues and arguments raised by the parties and find they are either unnecessary to our decision or without merit. We affirm the amended judgment.

[¶ 38] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.